———o———

VIRGINIA L. MINOR, et al., Plaintiffs in Error, vs. REESE HAPPERSETT, Defendant in Error.

1. *Laws, conflict of—Constitution of Missouri—Registration laws—Constitution of the United States—14th Amendment.*—There · is no conflict between the Constitution of the State and the registration laws, restricting the right of voting to male citizens, and the Fourteenth Amendment to the Constitution of the United States.

*Error to St. Louis Circuit Court.*

*John M. Krum, Francis Minor and John B. Henderson,* for Plaintiffs in Error.

This is an action, brought by the plaintiff, against the defendant, a registering officer, for refusing to register her as a lawful voter.

The defendant demurred to the petition. The defense, in substance, is based upon the Constitution of Missouri, which provides, (Art. 2, Sec. 18,) that " every *male* citizen of the United States, &c., * * * shall be entitled to vote ;"—

and also upon the registration law of said State, approved March 10th, 1871, to the same effect ; and it is claimed, therefore, that the defendant was justified in refusing to register the plaintiff, on account of her sex.

The plaintiff, however, denies the validity of this clause of the Missouri Constitution, and the registration act based thereon, and contends that they are in violation of, and repugnant to, the Constitution of the United States, and particularly to those articles and clauses thereof, which she has specified in her petition.

It is admitted, by the pleadings, that the plaintiff is a native-born, free, white citizen of the United States, and of the State of Missouri, that the defendant is a Registrar, qualified and acting as such—that the plaintiff, in proper time, and in proper form, made application to him to be registered, and that the defendant refused to register the plaintiff solely for the reason that she is a *female ;*—(and that she possesses the qualifications of an elector, in all respects, except as to the matter of sex, as before stated.)

The question is thus broadly presented of a conflict between the Constitution of the State of Missouri and that of the United States, as contemplated by the 25th section of the Judiciary Act of 1789, and the supplementary act of February 3rd, 1867.

The elective franchise is a privilege of citizenship, within the meaning of the Constitution of the United States.

A limitation not found there, nor authorized by that instrument, cannot be legally exercised by any lesser or inferior jurisdiction.

The subject of suffrage, (or the qualifications of electors, as the Constitution terms it,) is simply remitted to the States by the Constitution, to be regulated by them ; not to limit or restrict the right of suffrage, but to carry the same fully into effect. There can be no division of citizenship, either of its rights or its duties. There can be no half way citizenship. Woman, as a citizen of the United States, is entitled to all the benefits of that position, and liable to all its obligations, or to none.

The States can no more deprive a citizen of the United States of one privilege, than of another, except by the "law of the land." There is no security for freedom, if this be denied. To use the language of Mr. Madison, such a course ' violates the vital principle of free government, that those who are to be bound by laws, ought to have a voice in making them."—Madison Papers, vol. 3—Appendix, p. 12.

As Mr. Justice Story says:—"The States can exercise no powers whatsoever, which exclusively spring out of the existence of the National Government,which the Constitution does not delegate to them. * * * No State can say that it has reserved what it never possessed."—Commentaries, §§ 624-627.

We say, then, that the States may regulate, but they have no right to prohibit the franchise to citizens of the United States.

As to "BILLS OF ATTAINDER"—"DUE PROCESS OF LAW," &c.

"No State shall pass any bill of attainder," &c. "A bill of attainder is a legislative act which inflicts punishment without a judicial trial. If the punishment be less than death, the act is termed a bill of pains and penalties. Within the meaning of the Constitution, bills of attainder include bills of pains and penalties. In these cases the legislative body, in addition to its legitimate functions, exercises the powers and office of judge; it assumes, in the language of the text books, judicial magistracy, it pronounces upon the guilt of the party, without any of the forms or safeguards of trial; it determines the sufficiency of the proofs produced, whether conformable to the rules of evidence or otherwise, and it fixes the degree of punishment in accordance with its own notions of the enormity of the offense.

"To make the enjoyment of a right depend upon an impossible condition, or upon the doing of that which cannot legally be done, is equivalent to an absolute denial of the right under any condition. The effect, and not the language of the law in such case, must determine its constitutionality. It would not be doubted for a moment that a law expressly

denying the elective franchise to any person upon whom the Constitution confers it, would be unconstitutional. Why, then, is a law less objectionable, which, although not expressly and directly, yet no less certainly, denies the right," &c.— (Davies vs. McKeeby, 5 Nevada Rep. 7, 371; See also, The State vs. Staten, 6 Caldwell's Rep., p. 243; See also, Rison vs. Farr, 25 Ark. Rep., p. 175; Winehamer vs. People, 13 N. Y., 378; State vs. Symonds, 57 Maine, 150; Green vs. Briggs, 1 Curtis, 311; Embury vs. Connor, 3 Coms., 511; Huber vs. Riley, 53 Penn., 112; Cool. Cons. Limit.)

" By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment, is not therefore to be considered the law of the land. If this were so, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments, decrees and forfeiture, in all possible forms would be the law of the land." (4 Wheat., 581.)

That the elective franchise is a privilege of citizenship, we have the authority of Judge Washington, for he says: " What are the privileges and immunities of citizens in the several States? We feel no hesitation in confining these expressions to those privileges and immunities which are in their nature fundamental; which belong of right to the citizens of all free governments; and which have, at all times, been enjoyed by the citizens of the several States which compose this Union, from the time of their becoming free, independent and sovereign. What those fundamental principles are, it would perhaps be more tedious than difficult to enumerate.

" They may, however, be all comprehended under the following general heads: protection by the government, the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain hap-

piness and safety, subject, nevertheless, to such restraints as the government may justly prescribe for the general good of the whole. The elective franchise, as regulated and established by the laws or Constitution of the State in which it is to be exercised.—(Corfield vs. Corryell, 4 Wash. C. C., 380.—Cited and approved in Dunham vs. Lamphere, 3 Gray, 276, (Mass. ;) Bennett vs. Boggs, Baldwin Rep., 72.)

*Smith P. Galt,* for Defendant in Error.

The 14th Amendment to the U. S. Constitution does not apply to this case.

VORIES, Judge, delivered the opinion of the court.

This was an action brought in the St. Louis Circuit Court by husband and wife against the defendant, who was a registering officer, for refusing to register Virginia L. Minor, the wife, as a lawful voter.

The defendant demurred to the petition on the ground, that the said Virginia had no right to vote at the general election held in November, 1872, referred to in said petition, and on other grounds not necessary to mention. The defense being based upon the Constitution of the State of Missouri, which provides, that " every male citizen of the United States, &c., * * * * shall be entitled to vote at such election for all officers, State, County and municipal, made elective by the people, or any other election held in pursuance of the laws of this State;" and upon the registration law of said State, approved March 10, 1871, to the same effect, and requiring the registration officers to register such voters, &c. ; and it is claimed therefore, that the defendant was justified in refusing to register the plaintiff (Virginia L. Minor), on account of her sex.

The validity of this clause of the State Constitution, and the registration act based thereon, is denied by the plaintiffs, they contending that said constitutional provision and the act of the Legislature in pursuance thereof are in violation of the Constitution of the United States, and particularly to the clauses thereof specified in the petition.

There is no question made in reference to the sufficiency of the petition in other respects, provided that females have a right to be registered as voters, and vote at elections held un. der the Constitution and laws of the State, notwithstanding the provisions of the Constitution and laws of the State to the contrary thereof.

The question presented then is, whether there is conflict between the Constitution of the United States and the Constitution and laws of the State of Missouri on this subject. That the different States of the Union had a right, previous to the adoption of what is known as the 14th Amendment to the Constitution of the United States, to limit the right to vote at election by their Constitutions and laws to the male sex, I think cannot at this day be questioned. The (I may say) universal construction of the Constitution of the United States on this subject, and the almost universal practice of all of the States in reference to this subject, from the adoption of the Constitution to the present time, ought to be sufficient to prevent the necessity of an investigation of this subject now. There are certainly some questions that the courts of the country have a right to consider as settled, and that question I think is one of them.

By the 14th Amendment to the Constitution it is provided as follows :

" Sec. 1. All persons born or naturalized in the United States, and . subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States ; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

" Sec. 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians, not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the

United States, Representatives in Congress, the executive and judicial officers of a State, or the members of the Legislature thereof, is denied to any of the *male* inhabitants of such State, being 21 years of age, and citizens of the United States, or in any way abridged except for participation in rebellion or other crime, the basis of representation therein shall be reduced in the proportion, which the number of such *male* citizens shall bear to the whole number of male citizens 21 years of age in such State."

When we take into consideration the history of the times, in which this amendment was originated, and the circumstances, which in the view of its originators, produced its necessity, we will have but little trouble it seems to me to give it its proper interpretation. The whole slave population of the South had just been freed, and were about to enter into an entirely new relation with the balance of society, and were to assume new obligations and responsibilities. In this changed state of affairs, it was thought by those, who originated and adopted this amendment, that it was absolutely necessary, that these emancipated people should have the elective franchise in order to enable them to protect themselves against unfriendly legislation in which they could take no part; that unless these people had the right to vote and thus protect themselves against oppression, their freedom from slavery would be a mere mockery, and their condition but little improved. It was to remedy this that the 14th Amendment to the Constitution was adopted. It was to compel the former slave States to give these freedmen the right of suffrage, and to give them all of the rights of other citizens of the respective States, and thus make them " equal with other citizens before the law." There could have been no other intention to abridge the power of the States to limit the right of suffrage to the male inhabitants. It was only intended to give the freedmen the same rights that were secured to all other classes of citizens in the State, and that if the other male inhabitants of the State over the age of twenty-one years enjoyed the right of suffrage, so should the males amongst the freed-

men over the age of twenty-one years enjoy the same right; it was not intended that females, or persons under the age of twenty-one years, should have the right of suffrage conferred on them. This is not only shown by the history of the times when the amendment was adopted, and the circumstances which produced it, but by reference to the 2d Section of said Amendment it will be seen, that the right to restrict the right of suffrage to the male inhabitants by a State is clearly recognized. If "the right to vote, &c., is denied to any of the *male* inhabitants of such State being twenty-one years of age &c.," is the language used: this clearly recognizes the right, and seems to anticipate the exercise of the right, on the part of the States to restrict the right of suffrage to the male inhabitants.

I think the Circuit Court committed no error in sustaining the demurrer to the petition.

Judge Wagner absent. The other judges concurring, the judgment of the Circuit Court is affirmed.