PETER MATHEWS, PLAINTIFF IN ERROR, V. THE STATE
OF NEBRASKA, DEFENDANT IN ERROR.

1.  **Criminal Law:** EVIDENCE OF PRISONER.    At common law,
    where the accused was not permitted to testify in his own be-
    half, the testimony of the prosecutrix might be sufficient to
    warrant a conviction for rape; but under the statute, where the
    accused avails himself of the right to testify and clearly and
    explicitly denies the commission of the offense, there must be
    testimony corroborating that of the prosecutrix to authorize a
    conviction.    *Oleson v. State*, 11 Neb., 276.    *Fisk v. State*, 9 Neb.,
    62.

2.  **Rape:** EVIDENCE.    To authorize a conviction for rape the tes-
    timony must show that the prosecutrix resisted to the extent of
    her ability.    Evidence examined, and *Held*, Insufficient.

3.  **Evidence:** OBJECTION.    Where a question is asked a witness
    to which objection is made, which is sustained, the party desir-
    ing the evidence must offer to prove the facts sought to be intro-
    duced in evidence.

4.  **Criminal Law.**    An escape is not necessarily an admission of
    guilt.

ERROR to the district court of Lancaster county.    Tried
below before POUND, J.

*J. L. Caldwell*, for plaintiff in error.

*William Leese, Attorney General,* for defendant in error.

MAXWELL, CH. J.

The plaintiff was convicted of the crime of rape at the May term, 1885, of the district court of Lancaster county, and was sentenced to imprisonment in the penitentiary for three years. He now alleges error in the proceedings. The errors deemed material will be noticed in their order.

First, that the verdict is not sustained by the evidence. The sole testimony upon which the verdict rests is that of the prosecuting witness. She testifies that the offense was committed in March, 1881; that at that time and for some years previously she had resided in a shanty 10 by 12 feet square in North Bluff precinct; that in 1881 her husband had been dead about two years, and that she lived entirely alone; that her nearest neighbors were named Maher, and resided about eighty rods from her residence; that on the morning of the day on which the offense is alleged to have been committed the prisoner and one Taylor came to her residence and shoveled the snow away from around the same and carried in fuel, etc., and then left; that in ten or fifteen minutes after Mathews and Taylor left—"about ten minutes, I should think—not more than ten minutes—I had not made my dinner yet—Mathews returned. * * * He said, ' Come and lay down on the bed.' I said, 'No, sir, I don't do that kind of business, unless I was married to a man.' He said, it would not be long; something like that; he just took my chair and wheeled it around— didn't throw me off; he waited a few minutes to see if I was going; I didn't go, and he wheeled it round the second time; still I didn't go, and he took hold of me and threw me off."

Prosecuting Attorney. Go on and tell how he threw you on the bed.

A.   He took me round the waist and throwed me on the bed, and then kept me there till he got his satisfaction.

Q.   State what he did?

A.   Till he had full connection with me.

Q.   What did you do while on the bed?

A.   I got away from him once; then he got me back the second time—he being strong and I being so weak, wanting something to eat and fright together, I had not much strength—you all know that—you ought to know it; I tried to get away the second time, but could not get away; he kept me till he got his satisfaction.

Q.   Had he connection with you?

A.   Yes, full connection.

Q.   State to the jury what you did in the way of resisting—if you did anything more, tell it?

A.   I did not do anything more, but just tried to get away from him all I could.

Q.   Did you use your full strength?

A.   I used all the strength I had to get away from him, but could not.

This is all the testimony in the record in regard to the force alleged to have been used by the prisoner, or the resistance of the witness.   She also testifies that she was 58 years old at that time.

In *Oleson v. State,* 11 Neb., 276, it was held that where it appears that at the time the offense was alleged to have been committed the prosecutrix was conscious, and had possession of her natural mental and physical powers, and was not terrified by threats or in such a position that resistance would be useless, it must appear that she resisted to the extent of her ability.   In that case the offense was alleged to have been committed about 10 o'clock at night in the shanty in which the prosecutrix resided, in the city of Lincoln.   Several neighbors resided within hearing distance, but she made no outcry.   Her clothes were not torn, nor were there any marks of violence on her person to in-

·dicate a struggle.   The court held that the evidence as to resistance was not sufficient to sustain the charge.

In *People v. Dohring*, 59 N. Y., 382, it is said: "The resistance must be up to the point of being overpowered by actual force, or of inability from loss of strength longer to resist, or from the number of persons attacking resistance must be dangerous or absolutely useless, or there must be duress or fear of death. *Reg. v. Hallett*, 9 C. and P., 748; 1 Hawk., P. C., chap. 4, § 2." And on page 383 it is said: "But whatever the circumstances may be, there must be the greatest effort of which she is capable therein to foil the pursuer and preserve the sanctity of her person.   This is the extent of her ability." And see *The People v. Bransby*, 32 N. Y., 525, 531, 540.   *The People v. Hulse*, 3 Hill, 309, 316, 317.   *Rex v. Lloyd*, 7 Carr and P., 318.   *The People v. Crosswell*, 13 Mich., 427, 433.

In *State v. Burgdorf*, 53 Mo., 65., the offense was alleged to have been committed on a girl 16 years of age.   That the prisoner had sexual intercourse with the girl seems to be conceded in the opinion, but there was no resistance nor ·outcry.   It is said (page 67): "The crime under consider-·.ation can, in the language of one of the authorities, only be committed where there is on the part of her on whom the attempt is made the utmost reluctance and the utmost resistance.   The passive policy or a mere half-way case will not do."

In *People v. Abbot*, 19 Wend., 194–195, it is said: ·"Any fact tending to the inference that there was not the utmost reluctance and the utmost resistance is always re-·ceived.   That there was not an immediate disclosure, that · there was no outcry, though aid was at hand, and that known to the prosecutrix, that there are no indications of violence to the person, are put among the circumstances of ·defense, not as conclusive, but as throwing distrust upon the assumption that there was a real absence of assent.   1 Hale, P. C., 633.   A mixed case will not do: the connection

must be absolutely against the will." To the same effect are *The People v. Morrison*, 1 Park. Cr. R., 625. *Woodin v. The People*, 1 Park. Cr. R., 464. *Taylor v. State*, 50 Geo., 79. *People v. Brown*, 47 Cal., 447. *Whitney v. State*, 35 Ind., 506. *People v. Benson*, 6 Cal., 221.

In *Conners v. State*, 47 Wis., 523, it was held error for the trial court not to press upon the attention of the jury the rule that voluntary submission by the woman while she has the power to resist, however reluctantly yielded, deprives the act of an essential element of rape.

In *Whittaker v. State*, 50 Wis., 518, it is said : "Any consent of the woman, however reluctant, is fatal to a conviction. The passive policy will not do. There must be no consent. There must be the utmost reluctance and resistance." *State v. Burgdorf*, 53 Mo., 63. "It must appear that she showed the *utmost reluctance* and used the utmost resistance." *Don Moran v. The People*, 25 Mich., 356. See also *People v. Hulse*, 3 Hill, 316. *State v. Murphy*, 6 Ala., 765. *Pleasant v. State*, 8 Engl., 360.

Many other cases to the same effect could be cited. The reason for this rule is apparent, as probably but comparatively few women would admit that they gave their assent to illicit intercourse. If the mere refusal to give express assent was sufficient to establish the crime of rape, a very large proportion of the cases of illicit intercourse no doubt could be brought under that head, and no doubt would be, particularly where the conduct of the parties was exposed and such as to bring them into public odium. The law, therefore, as evidence that the act was commited against her will, requires the prosecutrix to use all the means in her power to prevent the consummation of the act. If the act is committed with force and against her will there is a great probability that some marks will be left upon her person or clothing, or both, as evidence of the struggle, and if she make complaint at the first opportunity these facts tend to corroborate her testimony that the offense was

committed by some one. If no marks are left upon the person or clothing, and no complaint is made at the first opportunity, a doubt is thrown upon the whole charge, and unless the testimony of the prosecutrix is corroborated on material points, where the accused testifies as a witness on his own behalf and denies the charge, the testimony of the prosecutrix alone is not sufficient to warrant a conviction.

Sir Matthew Hale in Pleas of the Crown, vol. 1, page 633 (Ed. of 1778), lays down rules for testing the credibility of the principal witnesses, which are as applicable to-day in trials of this character as when announced. He says (page 635): "It is true that rape is a most detestable crime and therefore ought severely and impartially to be punished with death, but it must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." He then mentions several unfounded and malicious prosecutions for rape, among them a case tried before himself, where the prosecutrix swore positively to the commission of the offense, and it turned out upon inspection to have been physically impossible for the accused to have committed the offense. He adds, "I only mention these instances that we may be more cautious upon trials of offenses of this nature wherein the court and jury may with so much ease be imposed upon, without great care and vigilance, the heinousness of the offense many times transporting the judge and jury with so much indignation that they are overhastily carried to the conviction of the person accused thereof by the confident testimony sometimes of malicious and false witnesses."

In the case at bar the testimony fails to show such resistance on the part of the prosecutrix as would constitute the offense. All that she testifies to may be true, and still the act not have been against her will. The proof, therefore, fails to establish the charge.

2d.   There is no corroborating evidence whatever.   In *Garrison v. The People*, 6 Neb., 283, an instruction had been given in the court below that if the jury were satisfied beyond a reasonable doubt, from the testimony of the prosecutrix alone, of the guilt of the accused they would be justified in returning a verdict of guilty.   There was no bill of exceptions in that case, and the case came before the court upon errors in the record and instructions.   The presumption being that the instruction was applicable to the testimony, it was held not erroneous.   It was not held nor intended to be that the bald assertion of a prosecutrix, whose testimony was contradicted by other witnesses, would be sufficient where there were no marks upon her person or clothing showing a recent struggle, or no complaint as soon after the occurrence as an opportunity offered.   Hence, in *Fisk v. State*, 9 Neb., 62, where no complaint was made until about six months after the commission of the alleged offense, and the accused was convicted on the naked assertions of the prosecutrix, which he had denied in his testimony, the verdict was set aside and the charge was afterwards discovered to be entirely unfounded, and the case was dismissed by the court below.

In *Oleson v. State*, 11 Neb., 276, there was no testimony tending to corroborate the statements of the prosecutrix that the defendant resorted to force, and the fact that she made no outcry or resistance such as the law requires, rendered the proof insufficient to establish the charge.

In *Murphy v. State*, 15 Neb., 383, the accused testified in his own behalf and admitted the sexual intercourse with the prosecutrix at the time and place and under the circumstances described by her, thus corroborating her on several of the material points in the case and leaving only the question of force and resistance for determination.   The testimony of the prosecutrix was strengthened by the fact that she had been married but four weeks, and was then living with her husband, the improbability that she would

Mathews v. State.

voluntarily permit a colored man to have sexual intercourse with her, and by the fact that immediately on returning to her friends she informed them of the offense.

At common law the accused was not permitted to testify in his own behalf. However false or malicious the charge might be his lips were sealed, and if the prosecutrix testified positively to the facts constituting the offense, and there was no evidence to the contrary, the courts held the evidence sufficient.

Sir Matthew Hale, however, 1 P. C., 633, contended that corroborating proof was necessary. Under our statute the accused is permitted to testify in his own behalf, and, in that regard the statute has changed the common law rule so that where his testimony expressly denies that of the prosecutrix she must be corroborated to authorize a conviction. For this purpose the prosecution may show that the prosecutrix made immediate complaint, and any marks upon her person or clothing which would indicate a struggle may be given in evidence for the purpose of showing the attack upon her. Her statement cannot be used as evidence-in-chief, but may be enquired into on cross-examination. *Oleson v. State*, 11 Neb., 276. 3 Greenleaf Ev., § 213.

The law presumes that a woman who has suffered the indignity and brutality of a rape will not submit in silence to the wrong, but will at once take the necessary steps to bring the offender to justice. This was one of the tests of the common law. Blackstone says: "The party ravished may give evidence upon oath, and is in law a competent witness, but the credibility of her testimony and how far she is to be believed must be left to the jury upon the circumstances of fact that concur in that testimony, for instance, if the witness be of good fame; if she presently discovered the offense and made search for the offender; if the party accused fled for it. These and the like are concurring circumstances which give greater probability to her evi-

22

dence." 4 Blacks. Com., 213. As there was no attempt made to corroborate the testimony of the prosecutrix in this case her evidence alone could not have been sufficient.

3d. A number of questions were asked the prosecuting witness, intended apparently to challenge her character for chastity. These were excluded. The proper course in such case is, upon the exclusion of the question to offer to prove certain facts. In other words, the evidence which the party proposes to offer must be presented to the court, as well as the questions to which objection is made; the court will then be able to determine whether or not the evidence is pertinent. We are unable, therefore, to determine whether or not the court erred in its rulings on that matter.

4th. The testimony tends to show that the prisoner's home is in the state of New York; that he was arrested in that state in 1881 and escaped from the officer on his way here. The proof upon this point is not very clear, nor is it necessary to consider it. An escape or attempt to escape has been held as ground to infer consciousness of guilt; but the weight of this consideration is frequently greatly modified by special circumstances. 1 Bish. Cr. Pro., § 1250. History shows that escapes and attempts to escape are not confined to the guilty alone, and that but little reliance can be placed on them as evidence. The prisoner at that time was a mere youth, and certainly cannot be convicted on the ground alone of an attempt to escape. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.