Richards v. State.

STRAUT RICHARDS v. STATE OF NEBRASKA.

FILED JANUARY 3, 1893.   No. 4591.

1. Rape: ADMISSIBILITY OF EVIDENCE. In a charge of rape, where no complaint was made for about seven months after the commission of the alleged offense and not until concealment by reason of pregnancy was no longer possible, *held*, that the statements of the prosecutrix were not admissible in evidence, but independent facts, such as the condition of her clothing at the time, are admissible.

2. ———: ———: EVIDENCE. Proof of deformity of prosecutrix, as by the want of a hand, is proper, as tending to show diminished power of resistance.

3. ———: ———. A charge of rape made months after the alleged commission of the same, where there were no marks of violence on the person or clothing of the prosecutrix, or evidence of excitement, or change in her demeanor, cannot be sustained unless there is very strong corroborating proof of the commission of the offense.

| | |
|---|---|
| 36 | 17 |
| 36 | 363 |
| 36 | 715 |
| 37 | 447 |
| 36 | 17 |
| 45 | 832 |
| 36 | 17 |
| 52 | 73 |
| 55 | 133 |
| 36 | 17 |
| 58 | 811 |
| 36 | 17 |
| 60 | 115 |
| d60 | 485 |

* For majority opinion see *post*, p 91.

4. ——: ——. Where the accused testifies in his own behalf and admits the sexual intercourse, but denies the use of force, it is for the jury to determine the facts from the testimony.

5. ——: ——. INSTRUCTIONS taken together, *held*, to state the law correctly.

6. ——: TRIAL: CONDUCT OF JUROR. A juror will not be permitted to state to his fellow jurors, while they are considering their verdict, facts in the case within his own personal knowledge. He should make the same known during the trial and testify as witness in the case.

ERROR to the district court for York county. Tried below before SMITH, J.

*George B. France, Robert Humphrey*, and *N. V. Harlan,* for plaintiff in error.

*George H. Hastings, Attorney General,* for the state.

MAXWELL, CH. J.

March 26, 1888, the prosecutrix, Blanche Sheeks, commenced a term of school about four and one-half miles west and one-half of a mile south of York, Nebraska. The term continued until June 10, 1888. She boarded from Monday until Friday at the house of Joseph J. Richards, father of the accused. She was seventeen and the accused nineteen years of age. They had been acquainted from childhood, having lived as neighbors for many years, but at this date the prosecutrix lived with her father in the city of York. In September and November of said year the prosecutrix taught another term of school at the same place. During this term she boarded at home, but kept her horse at the barn of Mr. Richards. During the spring term the prosecutrix was taken home on Fridays and back to her school on Mondays by some member of her family. The Richards family consisted of father, mother, Albert, Lot, Roy, Pearl, and the accused. On Friday or Saturday evening of the second week of school

no one of the family came for the prosecutrix, and she rode home in a buggy with the accused, who was going after the mail at York.   She reached home after dark, spoke kindly to the members of her family, went into the kitchen and got a drink of water, went upstairs to her room, and was seen no more that night, except by her sister, with whom she slept.   On the following Monday she went back to her school and continued to board with Mr. Richards during the remainder of the term, where, during all that time, the accused stayed as a member of the family.   The school house was just across the public road from Mr. Richards' house.   The accused remained a member of his father's family until about October 9, 1888, when, with his sister Pearl, he went to Lincoln, Illinois, on a visit, where the Richards family, prior to 1888, had resided and where two married sisters then resided.   In November, 1888, the prosecutrix, being seven months in the family way, made a charge of rape against the accused, saying it was committed on the ride, the 6th or 7th of April, 1888.   A requisition was obtained and the accused was brought back on the charge as far as Lincoln, Nebraska, where he escaped.   He was afterwards arrested at Louisville, Kentucky, where he was attending a commercial school.   In November, 1890, the case was tried and he was convicted.   A motion for a new trial was made and overruled and the accused was sentenced for three years in the penitentiary.   In impaneling the jury the court allowed the state to challenge J. W. Small and exclude him from the jury for cause.   The evidence of Small, in substance, is, that he heard the evidence of one witness on the former trial; that he had not paid much attention to it; that he did not form or express any opinion in the case, and that he had no bias or prejudice.   Substantially the same objections were made to the jurors Campbell, Miller, and Bohl, and they may be considered together.

A trial court, in impaneling a jury to serve in a partic-

ular case, has a very extensive discretion in discharging a person called as a juror, who might, as shown by his answers, not make an entirely fit or competent person to serve as a juror. This rule, however, should not be applied to retaining jurors. (*State v. Miller*, 29 Kan., 43; Maxw., Cr. Proc., 581.) In the case cited from Kansas it is said: "We do not think that the court below committed any substantial error as against the defendant, for, although it may be that Estlinbaum, the juror excused, was not so absolutely incompetent to serve as a juror that the court below could have committed material error by permitting him to serve as a juror, yet it cannot be doubted but that twelve men more competent could easily have been found and obtained to serve on the jury. We can hardly see how the court could commit substantial error by discharging any person from the jury when twelve other good, lawful, and competent men could easily be had to serve on the jury. (*Stout v. Hyatt*, 13 Kan., 232; *A., T. & S. F. R. Co. v. Franklin*, 23 Id., 74.) There is an immense difference between discharging a juror and retaining him. To discharge him can seldom, if ever, do harm, while to retain him, if his competency is doubtful, may do immense injury to one party or the other."

The reasons given by the Kansas supreme court are satisfactory. The court may, where it appears from the evidence that there is some ground for believing that the juror may not be entirely impartial, discharge him, and error will not lie, provided a fair jury is obtained. The first error assigned, therefore, is overruled.

2. "That the court erred in permitting testimony as to the physical condition of the prosecutrix at or about the time the offense is alleged to have been committed, as it appears that she has but one hand." In this there is no error, as the evidence tended to show her inability to resist the alleged force of the accused. The second error assigned, therefore, is unavailing.

Richards v. State.

3. The third objection is to the failure of the prosecutrix to make complaint for many months after the crime was committed, and proof of her statements when made. The charge is made as having occurred early in April, 1888, while the child was born in January, 1889. The prosecutrix, in her testimony, testifies that the connection was accomplished by force and intimidation, by the production of a revolver at a lonely place on the road some distance east of the Richards residence; that her drawers were torn by the accused in front and down one leg; that she did not immediately complain, because the accused told her that her certificate would be revoked and that she was fearful of certain injuries to herself in case complaint was made. She is corroborated as to the torn condition of her underclothing by her mother.

Robert Tucker, a witness called on behalf of the state, testifies that he and another person, armed with a requisition, went to Illinois and arrested the accused; that he had a number of conversations with him in regard to this occurrence; that at one time he freely and voluntarily said:

A. In referring to this matter, Mr. Richards told me that he was very sorry for his family. He said he had a nice family and his folks would be sorry for him; that he was sorry for his family and not for himself, but for his mother and his sisters and the connection of the family, and then he went on and talked in that line, and finally said he expected that he was elected for a term in the penitentiary, I think he termed it the "pen." He didn't seem to care so much for himself as the others.

Q. What did he say about Miss Sheeks?

A. He said that Blanche was a nice girl, and that the girl he had left in Illinois was a nice girl; he seemed to have several nice girls on hands just then.

The accused testified in his own behalf on his direct examination as follows:

Q. Do you know about the length of time you were coming in?

A. Why, no; I don't know exactly how long, but probably it wouldn't be later than about three-quarters of an hour; I don't know just exactly.

Q. You may state what occurred on the way coming, if anything.

A. Why, after we turned, there into that road that runs there by Mr. Hibbard's we came to a house about forty rods from the corner, the Frenchman's house, and about forty rods east from that there is a large draw, and just before we got to the draw I made some advances towards Miss Sheeks, and the manner in which she received them, without any resistance to them, led me to believe that she was not unwilling for further advances, and as we drove down into the draw I asked her if she had any objections to our going down into the draw there, or insinuated in such a way that she knew; and so I proposed that we go down into it, and she said she hadn't; and we turned down the first big draw we came into—we turned down and went down in that about—I think it was about forty rods from the road—and the draw there is a branch of the draw there running west, a small draw—and we entered that and turned into this branch draw and drove so that people couldn't see us from the road, and there we stopped and I had connection with her there.

Q. And what did you do after that?

A. Well, I just put up the top; in the meantime I had the top down; I think I put up the top and straightened around and went on into York.

Q. Well, now, you may state what resistance, if any, she made.

A. No, sir; there was no resistance whatever. She was perfectly willing, if she had not been willing I should never have gone down in the draw.

From other portions of the testimony it appears that he planned the drive into York that evening, as he informed his mother at dinner, in the presence of the prosecutrix,

that such was his intention and asked his mother to have an early supper. It will be observed that the sexual intercourse is admitted by the accused, but force is denied. He also denies the use of a revolver, or that he had one. This simplifies the question somewhat. The statements of the prosecutrix were not admitted in evidence and no objections on these grounds can be sustained. Such statements were not admissible as part of the *res gestæ*.

4. Objections are made to certain parts of some of the instructions, but in construing them they must be considered together. They are as follows:

"3. The material allegations contained in the information under which the defendant is being tried are as follows: That the defendant, in York county, Nebraska, on the 7th day of April, A. D. 1888, in and upon one Blanche Sheeks, then and there being, forcibly, violently, unlawfully, and feloniously did make an assault, and her, the said Blanche Sheeks, then and there forcibly, unlawfully and against her will, feloniously did ravish and carnally know, she, the said Blanche Sheeks, not being the daughter or sister of him, the said Straut Richards, and the said Blanche Sheeks being then and there above the age of fifteen years.

"4. Rape is defined to be the unlawful carnal knowledge by a man of a woman or a female child, forcibly and against her will.

"5. The charge made against the defendant is in its nature a most heinous one and well calculated to create strong prejudice against the accused, and the attention of the jury is directed to the difficulty growing out of the nature of the usual circumstances connected with the commission of such a crime in defending against the accusation of rape. It is your duty to carefully consider all the evidence in the case and the law as given you by the court in arriving at what your verdict will be in this case. You must find on the part of the woman not merely a passive

policy or equivocal submission to the defendant, such re-
sistance will not do. Voluntary submission on the part
of the woman while she has power to resist, no matter how
reluctantly yielded, removes from the act an essential ele-
ment of the crime of rape. If the carnal knowledge was
with the voluntary consent of the woman, no matter how
tardily given or how much force had theretofore been em-
ployed, it is not rape unless you find from the evidence be-
yond a reasonable doubt that the said Blanche Sheeks was
prevented from making resistance and submitted to sexual
intercourse with the defendant through fear of personal
violence, as explained in the next instruction.

"6. The court instructs the jury that where a woman
submits to sexual intercourse, through fear of personal
violence, and to avoid the infliction of great personal in-
jury upon herself, and to save her life, then such carnal
intercourse is punishable as a rape, and if the jury believe
from the evidence, beyond a reasonable doubt, that the de-
fendant had sexual intercourse with the said Blanche Sheeks,
against her will, then the defendant may be guilty of the
crime of rape, although the said Blanche Sheeks did not
make the utmost physical resistance of which she was capa-
ble to prevent such intercourse, provided the jury further
believe from the evidence, beyond a reasonable doubt, that
the defendant threatened to use force and to do her great
bodily injury, or to kill her in case she did not submit, and
that she did submit to such intercourse through fear that
defendant would do her great bodily injury, or kill her.

"$6\frac{1}{2}$. Under the law of this state, if the defendant avails
himself of the right to testify and clearly and explicitly
denies the commission of offense, then there must be testi-
mony corroborating that of the prosecutrix to authorize a
conviction; but it is not essential, in order to obtain a con-
viction, that the prosecutrix should be corroborated by the
testimony of other witnesses as to the particular act con-
stituting the offense. It is sufficient if she be corroborated

Richards v. State.

as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the guilt of the accused is established beyond a reasonable doubt.

"7. If the jury believe from the evidence that at the time the offense is alleged to have been committed the said Blanche Sheeks made no outcry, and did not complain of the commission of the offense to others, but concealed it for a considerable length of time afterwards, then the jury should take these circumstances into consideration with all the other evidence in determining the question of the guilt or innocence of the defendant, and whether a rape in fact was committed.

"8. The law throws around the defendant the presumption of innocence and requires the state to establish by the evidence beyond a reasonable doubt every material fact averred in the information under which the defendant is being tried; and it is the duty of the jury to give the defendant in this case the full benefit of this presumption and to acquit the defendant unless the evidence establishes his guilt beyond a reasonable doubt.

"9. You are the judges of the credibility of the witnesses and of the weight to be given to the testimony of each and all of them. In determining the issues in this case you should take into consideration the whole of the evidence, giving to the several parts thereof such weight as you think they are entitled to. And in determining the weight to be given to the testimony of the several witnesses you should take into consideration their interest in the event of the case, if any such is proved; their conduct and demeanor while testifying; their apparent intelligence, fairness, or bias, if any such appears; the reasonableness of the story told by them; and all the evidence and circumstances tending to corroborate or contradict such witnesses, if any such are proved; and you may take into consideration any interest which any witness may have in the result

of this case, if any such is proved, and give to the testimony of such witness such weight as you think it is entitled to.

"10. The defendant has testified in this case as a witness in his own behalf, and in determining the weight to be given to his testimony you are at liberty to consider the degree of interest which he has in the result of this action and determine yourselves, from the testimony, the weight to be given to his testimony.

"11. By a reasonable doubt is not meant that the accused may possibly be innocent of the crime charged, but it means an actual doubt, having some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinary, prudent men with a conviction on which they would act in their most important concerns and affairs of life.

"12. If the proof of guilt amount to a moral certainty or such a moral certainty as convinces the minds of the jury as reasonable men, beyond a reasonable doubt, it is sufficient.

"13. If you believe that the evidence against the defendant has established all the material allegations contained in the information under which the defendant is being tried, beyond a reasonable doubt, you should convict the defendant.

"14. If the evidence against the defendant is not sufficient to establish his guilt beyond a reasonable doubt, it is your duty to return a verdict of not guilty.

"15. The court gives the jury with these instructions two forms of verdict, one finding the defendant guilty. After you have agreed upon your verdict, the verdict agreed upon should be signed by your foreman and returned into open court."

These instructions, taken together, are substantially correct, and appear to cover all phases of the proof.

Too much importance is given to criticism of the testimony of the accused, but the prejudice is not sufficient to cause a reversal. The conduct of the prosecutrix is inexplicable on the theory that the act was accomplished by force and against her will. So far as appears there was no visible mark of violence noticeable on either her person or clothing. She does not seem to have been excited, nor was anything noticed out of the ordinary course. Then the fact that she concealed the act as long as concealment was possible and intended, as she testifies, if nothing came of it to say nothing about it, is a strong circumstance against the theory of force. If the case rested upon her testimony alone it would not be sufficient to establish the commission of the offense. The testimony and admission of the accused, however, to some extent corroborates that of the prosecutrix. He admits the sexual intercourse and states where it took place; that he drove off the public road down the ravine some forty rods, and into a side ravine, may have been for the purpose he states, or perhaps where her cry for help could not be heard. The purpose must be gathered from the testimony. His conduct also since tended to show a sense of guilt, so that it is impossible for a court to say as a matter of law that the offense was not what the prosecutrix claims it to be, and that matter must be determined by a jury. (*Matthews v. State,* 19 Neb., 330; *Reynolds v. State,* 27 Id., 90.)

The accused filed an affidavit in support of the motion for a new trial in which he alleges that two of the jurors (naming them) stated to the jury while considering their verdict that the accused ruined other girls and was an improper person to run at large, and should be convicted on general principles. One of the jurors accused has filed an affidavit in which he denies many of the statements made by the accused. The denials, however, are not as broad as the

accusation. The other juror makes no denial. If a juror knows any facts pertinent to the case it is his duty to make them known and testify as a witness. He cannot be permitted to testify before the jury as to facts which he claims are within his personal knowledge, because it is for the court to say what evidence is admissible in the cause. If the affidavit of the accused is true, one of the jurors named stated facts to the jury which were not admissible in evidence and were of a highly prejudicial character. The judgment must therefore be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

NORVAL, J., not sitting. POST, J., concurs on the ground that there is not sufficient evidence to sustain the judgment of conviction.