JOHN O'HARA, PLAINTIFF IN ERROR, V. OSCEOLA O.
WELLS, DEFENDANT IN ERROR.

1.  Witness: HYPOTHETICAL QUESTIONS.  If hypothetical ques-
    tions are resorted to in the examination of expert witnesses,
    they must be so framed as to fairly reflect facts, either admitted
    or proved by other witnesses.                          .

2.  ——.   Although a non-expert witness is incompetent to give
    his opinion as to the existence of a dislocation of a limb, he may
    describe its appearance, as he saw it, to the jury.

3.  Physician and Surgeon.  Where no special agreement is
    made with a physician or surgeon respecting his services, the
    law implies an undertaking on his part simply that he will ex-
    ercise a reasonable degree of care and skill in the treatment of
    his patient, not that he will effect a perfect cure.

4.  Instructions.  The giving of an instruction to a jury, uncalled
    for by the evidence, if not prejudicial, is not a sufficient reason
    for setting their verdict aside.

ERROR to the district court for Gage county.  Tried be-
low before WEAVER, J.

The plaintiff in the petition alleged as follows:
"The said John O'Hara, plaintiff, complains of the said
Osceola O. Wells, defendant, and for cause of action says:
That the said plaintiff, before and at the times hereinafter
mentioned, had had the bone and ligaments of his left arm
broken and fractured and displaced, and that the said de-
fendant was a physician and surgeon, practicing as such in
the city of Beatrice, Gage county, Nebraska; that on, to-

wit: the 30th day of October, A.D. 1878, the said plaintiff at the special instance and request of the said defendant, retained and employed the said defendant for a reasonable reward to be paid therefor as such physician and surgeon, to set and reduce the said broken and fractured bone and ligaments of his said arm to their proper position and place, and to attend to, cure and heal the same; and the said defendant undertook and entered upon said retainer and employment; yet the said defendant, not regarding his duty in the premises, so carelessly, negligently, and unskillfully set and reduced the said fracture of said arm and the displacements thereof, and so negligently and unskillfully bound up and dressed and bandaged the same, and unskillfully and negligently nursed and attended to the said fracture and injury, that the said plaintiff, by reason of such unskillfulness and negligence, has wholly lost the use of his said arm, and his said arm has become and still is permanently crooked, and the bones, ligaments, and joints thereof permanently displaced and out of their natural state, position, and condition, whereby plaintiff has been greatly and permanently injured, and rendered unfit and unable to follow his lawful business, and has also been put to great expense, to-wit: the sum of $200, in and about endeavoring to straighten and improve and cure his said arm to the damage of the said plaintiff $10,200; wherefore the plaintiff prays judgment against the said defendant for the said sum of $10,200 his damage so as aforesaid sustained, and his costs of suit."

The answer was as follows:

"The defendant answers the petition of the plaintiff in above entitled action, and

"*First*—Denies the same, each and every averment thereof not hereinafter expressly admitted, traversed, or explained.

"*Second*—For second answer to said petition, the said defendant admits that the defendant was at the times in

said petition mentioned, and now is, a physician and surgeon practicing as such in the city of Beatrice, in Gage county, Nebraska. The defendant also admits that the plaintiff broke his arm, and that on or about the 30th day of October last past, at the request of the plaintiff, the defendant undertook to and did reduce said fracture of plaintiff's said arm and the displacement thereof.

"*Third*—And said defendant, further answering said petition, expressly denies that he carelessly, negligently, and unskillfully set and reduced the said fracture of said arm and the displacement thereof, and further expressly denies that he negligently and unskillfully bound up and dressed and bandaged and attended to said fracture and injury, but on the contrary, avers the facts to be that in and about the reducing of said fracture of said arm, and setting and caring for said fracture and said fractured arm, this defendant used the proper degree of skill, care, and diligence in the execution of his employment; and the defendant further avers that he did properly set the broken bone of said arm, and properly reduced the dislocation and fracture thereof, and properly treated and cared for the same until the proper time had arrived to discharge the plaintiff as a patient, and until said arm was healed and cured, at which time the defendant did discharge said defendant from further treatment, and the defendant had the full and free use of his said arm, and was perfectly satisfied with the defendant's professional services, and thereafter, and about nine weeks after plaintiff's said arm was set, the plaintiff settled with the defendant for his services, and for good and proper services, and paid the defendant nine dollars—all the money he had—which was one dollar less than defendant's charge for his said services, and then and there agreed to pay the defendant the balance of said charge, to-wit: one dollar, which sum he has failed and neglected to pay, on account of which defendant insists that plaintiff cannot now, and is estopped from claiming

O'Hara v. Wells.

for bad and improper services, and on account of which defendant claims that the plaintiff owes the defendant $1.

"*Fourth*—And the defendant, further answering said petition, avers that if the plaintiff's said arm is as represented and described in said petition, that said condition is the result of plaintiff's acts, carelessness, and improper use of said arm after he was discharged by defendant as aforesaid, and for which this defendant is in no wise responsible; wherefore, and for all the reasons aforesaid the defendant asks judgment that plaintiff's petition be dismissed with costs, and that defendant have judgment for $1, the balance due him on settlement for said services, and for his costs in defending this action."

*Colby & Hazlett,* and *O. P. Mason,* for plaintiff in error.

On cross-examination of plaintiff, cited: 1 Greenleaf Ev., § 449. 1 Starkie Ev., § 164. Hypothetical question: *Woodbury v. Obear,* 7 Gray, 467. *Hunt v. Lowell,* 8 Allen, 169. *Shepherd v. Willis,* 19 Ohio, 144. Testimony of Ellingsworth: *Chapin v. Inhabitants,* 9 Gray, 244. First instruction: Chitty on Cont., 630. Ellwell's Med. Jurisprudence. Second instruction: Profatt on Jury Trial, 314. Third instruction: *Roberts v. Eddington,* 4 Esp., 88. *Waldron v. Coombe,* 3 Taunt., 162. *Clark v. Detroit,* 32 Mich., 348. Fourth instruction inapplicable to the issue: *Sawyer v. Lauer,* 10 Kan., 470. *Morris v. Platt,* 32 Conn., 75. *R. R. Co. v. Whitmore,* 19 Ohio State, 110.

*A. Hardy* and *A. H. Babcock,* for defendant in error.

On plaintiff's declarations and admissions, cited: *Barber v. Merriam,* 11 Allen, 322. *Matterson v. N. Y. Central R. R.,* 35 N. Y., 487. Whenever contract is laid more comprehensive than that which the law implies, it then becomes special, and must be proved as laid. *Reynolds v. Graves,* 3 Wis., 371. *Grindle v. Rush and Green,* 7 Ohio,

125, pt. 2. McClelland's Malpractice, 201 and 202. Third instruction: *Almond v. Nugent,* 34 Iowa, 300. *Sutton v. Facey,* 1 Mich., 242. Fourth instruction: *Pecria Ins. Co. v. Anapow,* 45 Ill., 87. *Camp v. Phillips,* 42 Ga., 289.

LAKE, CH. J.

The verdict is fairly and sufficiently supported by the evidence found in the bill of exceptions, and the objection that it is not must be overruled.

The other matters relied on as ground for a reversal of the judgment are certain rulings of the judge upon the admissibility of evidence, and in his charge to the jury upon the law of the case. These will be considered in the order in which they are presented to us by counsel.

The first of these rulings occurred during the cross-examination of the plaintiff. He was asked whether, while he was still under treatment by the defendant, he did not say to one Hulitt that his arm was " mending slowly," and " getting stronger?" This was objected to on the ground of its being immaterial, irrelevant, and incompetent. But the objection was overruled, and a negative answer given.

It is not claimed that, of themselves, this question and answer were at all prejudicial, and clearly they were not. The complaint is, that they were permitted afterwards to be made the basis for calling upon Hulitt to give a contradictory and perhaps impeaching statement on this point. But to this testimony of Hulitt no exception appears to have been taken. Indeed it does not appear that the judge ruled upon the objection, which is simply noted in pencil upon the margin of the page, opposite the question, so that we are relieved of the duty of saying whether, in this respect, the testimony were admissible or not.

It is claimed that the court erred in sustaining objections to two of the questions put to Dr. James D. Minkler. The first of these questions was: " You can state whether if the

plaintiff, holding the horse with the halter in his hand, received a jerk or sudden pulling, and a kick on the arm, what the effect would be as to dislocations?" The second was this: "A blow breaking the bone of the arm—the ulna—what tendency would that have as to dislocations at the wrists?"

Both of these questions were objectionable, and rightly excluded. They were hypothetical, and as such much too indefinite, not being confined to conditions like those under which the plaintiff's arm was injured. Where hypothetical questions are resorted to in the examination of expert witnesses, they must be so framed as to fairly reflect facts either admitted or proved by other witnesses, otherwise the testimony drawn-out by them can have no real value, but may do much harm in the decision of the case. Besides, after these questions were ruled out, proper ones were put, and thus the opinion of the witness on the point fully obtained. In these rulings of the trial judge, as indeed in all others respecting the admissibility of expert testimony, we see no cause whatever for complaint.

As to the witness Boyd, he being neither a surgeon nor physician, the question put to him respecting the condition of the plaintiff's arm in January following the injury, "as to dislocation at the wrist," was rightly rejected on the ground of his incompetency. He was, however, properly permitted to tell the jury how the arm appeared at that time, in comparison with its appearance at the trial, and this was as far as he was competent to go.

It is claimed that the court erred in permitting the witness Ellingsworth to testify as to what the plaintiff said to him respecting his arm just after the splints were removed. His testimony was that the plaintiff showed his arm, and "said he felt satisfied, and that it was all right." It is said by counsel in argument, "that the plaintiff was no expert, and he knew nothing at that time as to whether his arm was all right or not."

O'Hara v. Wells.

It is possible that the plaintiff's want of knowledge on the subject rendered his opinion expressed to this witness of very little or no real value; but this the record shows was not the ground on which its exclusion was asked, the objection to it there being simply that what he had said was "immaterial and irrelevant," which very clearly was untenable. But independently of this technical criticism of the objection made in the court below, we think the admission entirely competent evidence, and of considerable value in view of the plaintiff's testimony respecting the condition and his use of his arm, especially of the wrist and elbow joints, and of the injury caused by his fall, in endeavoring to jump over a saw-horse some time afterwards. There is no error in this particular.

The errors alleged of the instructions are four. The first one complained of was in reference to the undertaking of a physician and surgeon in the practice of his profession. It laid down the rule that "the law implies an undertaking on his part that he will use a reasonable degree of care and skill in the treatment of his patient," etc., and that he is not liable in damages for want of success, "unless it is shown to result from a want of ordinary skill and learning, and such as is ordinarily possessed by others of his profession, or for want of ordinary care and attention."

It is conceded that this would be a fair statement of the law applicable to the ordinary engagements of physicians and surgeons, wherein they undertake no more than what the law expects of them. But it is claimed that it was not applicable to the case at bar, for the reason, as we understand counsel, that the defendant's engagement was, without qualification, to effect a complete cure. We do not so understand the case as made by either the petition or the evidence. We see nothing in it respecting the rights and liabilities of the parties at all unlike those cases where, without special agreement, physicians answer to the ordinary calls upon them by the sick for treatment. No special

agreement is here either alleged or proved; no certain result from the service rendered by the defendant was asked or promised. And so, we apprehend, the plaintiff's counsel must have regarded the case at the trial, for otherwise their management of it, especially in asking an instruction upon the implication of law, which was given, couched in sub-stantially the same language as that of the one now objected to, could not be satisfactorily accounted for. The instruction stated the rule correctly, and it was entirely applicable to the evidence before the jury.

The second instruction to which exception is taken was in these words: "A party is not negligent if he use all the skill and diligence which can be attained by reasonable means." It is objected to this, *first*, that it assumes "there was no express contract;" and, *second*, that it is indefinite and vague, and does not say what party or who it is, whether the plaintiff, defendant, or some other person. The first of these objections is sufficiently answered by what we have said respecting the nature of the defendant's engagement; and as to the second, all that need be said is, that we regard the criticism as being without any merit whatever. It would be exceedingly unjust to the jury to indulge in the presumption that they did not, or possibly could not, comprehend the meaning of the word "party" in this instruction, when taken in connection with the rest of the charge. We are unwilling to admit that they could have been sufficiently stupid to have supposed that any one but a person occupying a relation similar to that of the defendant to the plaintiff was meant.

Exception is also taken to the charge that, "A medical diploma from a regularly constituted medical college is *prima facie* evidence of ordinary skill." It is true, as claimed by plaintiff's counsel, that there was no issue to which this was applicable, and why it was requested or given does not appear. That the defendant was what he held himself out to be, a competent practitioner of the

healing art, was not disputed, but conceded by the petition. He was sued as such. The gist of the complaint against him was simply that he performed his work on the injured limb "carelessly, negligently, and unskillfully." But while the instruction was uncalled for, it is not possible that it could have prejudiced the plaintiff, and therefore is not a sufficient reason for setting the verdict aside.

And finally, it is claimed that there was error committed in giving the fourth instruction requested by the defendant, which was that, "The patient must exercise ordinary care and prudence, and obey all reasonable instructions given him by the surgeon." It is conceded that, as an abstract proposition of law, the instruction may have been sound, but it is contended that there were no facts to which it was applicable. In this contention we think counsel labor under a mistake. The defendant testified that at the time of the removal of the splints, he "told him to be careful of his arm and work it—flex it—and break these attachments of the ligaments loose therefrom the callous." This was about the middle of December. Instead of being careful, however, it is shown by the testimony of the plaintiff himself that some time in February following, and while his arm was still in a weak condition, he injured it to some extent while engaged in the sport of jumping over a saw-horse with one Boyd. On the witness stand he said of this affair, "I was on the ranch of Boyd. I think it was about the middle of February. He had a carpenter's saw-horse, and we were jumping over it, and in jumping over I struck on the top of the horse, and it broke down under me, and I struck across with my back, and fell over that way, and struck the ground with my hand, and I got up and saw the wrist was swollen a little." And on this point there is the testimony of several witnesses to the effect that the plaintiff told them in substance that "his arm was all right until he fell over a saw-horse and broke it again," that this fall "was

what threw it out of place at the wrist and elbow," etc.    There was at least sufficient evidence of this sort before the jury to warrant a finding that the dislocations complained of were caused by this fall, and not by the kick which produced the fracture.    There is no error complained of for which a new trial should be granted, and the judgment will be affirmed.

JUDGMENT AFFIRMED.