PETER B. BURGO, PLAINTIFF IN ERROR, V. THE STATE
OF NEBRASKA, DEFENDANT IN ERROR.

| 26 | 639 |
|----|-----|
| 37 | 495 |
| 26 | 639 |
| 48 | 160 |

[FILED MAY 31, 1889.]

1. **Criminal· Practice:** CONTINUANCE. Where an information
was filed against A, charging him with an attempt to kill B, he
pleaded "not guilty," and asked for a continuance of the case
upon the ground that certain persons named, who resided out of
the state, were necessary witnesses; "that he can prove by each
of said witnesses that this affiant has suffered from hereditary
insanity, to a greater or less extent, all through his life ; that he
inherited the same from his mother," etc., there being no allega-
tion that there were no other witnesses by whom the same facts
could be proved, and no allegation that at the time of the com-
mitting of the offense complained of the accused was unable to
distinguish right from wrong in regard to the particular act
charged : *Held*, That the affidavit was wholly insufficient to
justify·a continuance.

2. ———: INSANITY : EXPERT TESTIMONY. Where the opinion of
an expert is sought upon the question of the insanity of the ac-
cused, the hypothetical questions to such expert must be so
framed as to fairly reflect the facts admitted or proved by other
witnesses.

3. **Instruction** examined, and *held*, not erroneous.

ERROR to the district court for Douglas county. Tried
below before GROFF, J.

*Offutt & English,* for plaintiff in error, cited: *Pannell v.
State,* 29 Ga. 681 ; *The King v. D'Eon,* 3 Burr. 1514; *Peo-
ple v. Vermilyea,* 7 Cowen, 388; *Brill v. Lord,* 14 Johns.
341; *Louisville, N. A., etc., R. Co. v. Falvey,* 3 N. E. Rep.
389; *Quinn v. Higgins,* 63 Wis. 664; *Cowan v. State,* 22
Neb. 525; *State v. Jones,* 50 N. H. 369.

*Wm. Leese, Attorney General,* for defendant in error, cited:
Maxwell's Crim. Procedure, p. 566; 1 Russell on Crimes,
note 1, p. 27, (9th Ed.;) *Webb v. State,* 9 Texas Appeals,

490; Wharton on Evidence, (3d Ed.,) sec. 451; *Carr v. State*, 23 Neb. 749.

MAXWELL, J.

The plaintiff in error was informed against in the district court of Douglas county, for an assault upon his wife with intent to kill her, and on the trial was found guilty as charged, and sentenced to imprisonment in the penitentiary for fifteen years.

1st. The first error assigned is, that the court erred in overruling the motion for a continuance. The offense is alleged to have been committed on the 8th day of April, 1888; and the plaintiff was arrested on the next day. On the 14th of that month he was informed against, and on the 14th of May of the same year he was arraigned and pleaded not guilty. He thereupon filed the following affidavit for a continuance: "The affiant, Peter Benjamin Burgo, says that he is not ready for trial at this term of the court, because of the absence of the following witnesses, viz.: Adeline Southerland, Lucy Bamberg, Sarah Moore, Henry Burgo, Frank Mackey, Lemuel Foote, Samuel Foote, T. E. Ellsworth, Sut. Scripture, Robert Terry, Charles Gilman, Robert Y. McColloch, Addie Costley, Oscar Seward, Pearly Huggy, Susan Bowles, Edward Bowles, and Gus. Bowles, which said witnesses all live out of this state, and who severally reside at and in the states particularly and specially stated in the affidavit of this affiant's attorney, Charles Offutt, filed herein.

"Affiant says that he can prove by each of the said witnesses that this affiant has suffered from hereditary insanity, to a greater or less extent, all through his life, and that he inherited the same from his mother, who was so insane for more than twenty years next before her death, which occurred five years ago; that she was unable to recognize any person related to or previously known to her; that for

many years before the twenty years, at which she became so insane as aforesaid, she was subject to temporary fits of insanity, during which she did not know what she was doing, and did not understand either the legal or moral effects of her acts; that at said time his mother attempted suicide.

"Affiant further says that during all his life, or the greater portion thereof, he has lived outside the state of Ne-braska, and has only recently come to live in the city of Omaha; that he knows no one in the city of Omaha who will testify to the aforesaid facts, or any part thereof, and does not know any one in the said city who knows this affiant sufficiently well to be able to state what the true facts are in relation to the mental condition of this affiant. He further says that he believes that he can prove by each of said witnesses that this affiant has been for many years, and that he was at the time of the assault complained of, unable to distinguish right from wrong, and did not know the legal or moral effect or consequences of his acts. He further says that the affidavit is not made for delay, but in order that he may obtain a just and a fair trial."

The above affidavit wholly fails to state facts sufficient to entitle the affiant to a continuance. Leaving out of view the failure to allege that the persons named are intimately acquainted with the affiant, or any fact showing knowledge on their part, there is an entire failure to allege that he cannot prove the same facts by other witnesses in the state. The allegation that he has lived outside of the state the greater portion of his life, and that he knows no one in Omaha by whom he can prove these facts, falls far short of showing that he knows of no other witnesses who would testify to all that it is alleged the witnesses named would testify to. In addition to this, the fact that the affiant's mother was afflicted with insanity, will not justify him in the commission of crime, unless he also, at the time of committing the act complained of, was unable to distin-

guish right from wrong in regard to that particular act, which is not alleged. There is also an affidavit of one of the attorneys of the plaintiff in error in which he states in substance that he has but recently been called into the case; that he has not had time to correspond with the witnesses named to ascertain to what extent the hereditary taint of insanity affected the plaintiff in error; and that insanity was the only defense he intended to make.

There may be cases where it would be proper to continue a cause in order to obtain proof of hereditary insanity, but this is not one of them, and therefore the question does not arise, as there is no denial that the plaintiff in error could distinguish right from wrong in regard to the particular act complained of, when he committed the same. The court therefore did right in overruling the motion for a continuance.

2d. The second error relied upon is that the court erred in rejecting competent evidence. This refers to certain hypothetical questions propounded to Dr. Tilden. The questions as proposed contained a summary of but a portion of the evidence. "Thereupon the court said, 'Make your question conform to the facts, and then ask it—the facts admitted or already proved.'" In *Morrill v. Tegarden*, 19 Neb. 534, the objection was that the hypothetical questions did not reflect all the facts established by the witnesses. The court held, however, that the questions propounded did fairly reflect the facts of the case. (See also *O'Hara v. Wells*, 14 Neb. 403.) The necessity that the questions shall fairly reflect the facts proved or admitted, where it is sought to show insanity as an excuse for crime, is apparent. The plea is in the nature of confession and avoidance. The avoidance— the insanity— is to be shown by the testimony. How can an expert give an intelligible opinion upon that point, or one that the jury would be justified in acting upon, unless the inquiry reflects the proof on that question? There must be a fair statement of the case to render the

answer of any value whatever, as a partial statement, or one founded on mere fiction, would not fail to mislead the jury and probably cause a miscarriage of justice. The court did not err, therefore, in its ruling.

The writer, for himself, desires to say, after considerable experience and observation, that the ordinary medical expert's testimony, in regard to insanity, particularly where graduates of different schools of medicine are pitted against each other, is of the most unreliable character. It is evident that there is something radically wrong in the teachings of such schools in regard to insanity, or that knowledge on the subject is so limited as to place the student of that malady but little in advance of the average citizen. But whatever the cause, it is certain that if the person who commits an atrocious murder has been eccentric in his conduct, although perfectly sane, apparently, plenty of alleged experts can be found who will testify in effect that he was of unsound mind, while the same proof, if offered to justify robbery, larceny, burglary, or other ordinary offense, would be laughed out of court. It is probable that there is no better proof of the sanity or insanity of a person than the testimony of those who are intimately acquainted with him and have observed his conduct for months or years.

3d. Objections are made to the following instructions of the court to the jury :

" You are instructed that while the presumption of insanity has been raised, and the burden of proof to show the sanity of the prisoner is upon the state, yet, in order to acquit, it is not sufficient that you find the prisoner insane. If you find from the evidence, beyond a reasonable doubt, that at the time the defendant did the cutting he had a sufficient degree of reason to discern the difference between moral good, and evil, then he is responsible for his acts, and you should [so] find by your verdict. If, however, you find from the evidence that at the time the prisoner committed the offense charged he acted under an irresistible impulse,

and at the time was unable to distinguish between right and wrong, then you should acquit."

It is claimed that this enlarges the rule laid down by this court in *Wright v. People*, 4 Neb. 407, and *Hawe v. State*, 11 Id. 537, that where the individual accused lacks the mental capacity to distinguish right from wrong in reference to the particular act complained of, the law will not hold him responsible. This we think is a correct statement of the law. It is difficult to perceive, however, how the general statement in the instruction if "at the time [he] was unable to distinguish between right and wrong, then you should acquit," could injure the plaintiff in error. The broad application of the rule was in his favor, and is not ground of error. The loss by another of his reason, whether temporarily or irretrievably, whereby he ceases to have control of his own mind, actions, and conduct, enlists our sympathies, and causes us to seek to ameliorate his condition; hence the asylums provided by the state for his welfare. And as he was unable to distinguish right from wrong, the state will not hold him accountable for a violation of its criminal law, there being no intent to violate the same, nor ability to resist the impulse.

It must not be forgotten, however that occasional oddity or hypochondria of the person committing the offense, or the fact that he possesses an ungovernable temper, must not be mistaken for insanity; nor can the accused, as in this case, where he retains his reason, rely for proof of his insanity upon the fact that one of his parents was at times afflicted in that manner. The proof in this case shows a wanton and deliberate effort of a husband to murder his wife. The proof shows the act to have been premeditated and the attempt deliberately made. There seem to be no extenuating circumstances in the case, and there is no material error in the record. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

COBB, J., concurs.

REESE, CH. J.

I agree to the judgment, but not to the reflections contained in the latter part of the second division of the foregoing opinion.