STATE v. A. P. THOMSON.

(Filed 2 November, 1910.)

1. Murder—Range of Bullet—Expert Evidence.

On a trial for murder committed by shots from a pistol, a question asked a non-expert witness, "whether from the course of the ball after it struck the body, could the shot have been made when both parties were standing," was not improperly excluded, no prejudice being shown.

2. **Murder, Second Degree—Range of Bullet—Evidence Germane—Premeditation.**

Prisoner admitted the killing, with a pistol, of his former wife, from whom he had been divorced, in a struggle for the possession of their young child, and testified that in the struggle the child was turning black in the face because he held to it, and the mother, who was holding to it, continued to do so after she had fallen. There was evidence that he fired at the woman just before she fell, and then again while she was on the floor. It was not clear which shot was the fatal one, and the prisoner further testified that the second shot was to scare her so that she would release the child. There was no suggestion of self-defense. *Held*, a question relating to the range of the bullets to show the position of the parties, was not germane to the issue, and the prisoner having admitted the killing with a deadly weapon, no excuse appearing, he was at least guilty of murder in the second degree, and the exclusion of the question by the court was proper.

3. **Murder, Second Degree—Deadly Weapon—Purpose—Evidence.**

The prisoner upon trial for the murder of his wife from whom he had been divorced and who had married again, attempted to show that on a former occasion the present husband had tried to carry away two children of the former marriage who were with him, the divorced husband, and he had drawn a pistol on the prisoner, and that on this occasion, when the prisoner went to his former wife's home to get his young child which had been carried there, he did not intend to use the pistol he was carrying unless necessary. *Held*, the testimony was properly excluded: (1) the trial of prisoner was not for the shooting of the husband; (2) the prisoner was acquitted of murder in the first degree, and the question could only have been competent, in any event, upon the question of deliberation and premeditation.

4. **Murder—Defense—Insanity—Expert Witness—Incompetent Questions.**

Upon plea of insanity as a defense to a charge of murder, the answer of an expert, to be competent, must be to a question presenting all the vital facts in the case, for otherwise his opinion could not have any value upon the query whether the prisoner had sufficient mind at the time to understand what he was doing, and to know whether he was doing right or wrong.

5. **Murder—Defense—Insanity—Expert Witness—Evidence—Basis.**

In order for an expert to testify upon the insanity of the prisoner, in his defense to a charge of murder, there must be some evidence that the prisoner's mind had been diseased or that there had been insanity in his family; and the mere fact that the witness is an expert does not give latitude to his expression of opinion.

**6. Murder—Defense—Life of Another—Justification.**

It appearing that the prisoner twice shot his wife from whom he had been divorced, while struggling for the possession of their young child, both shots taking effect, and fired at such close range as to scorch her clothes, he is not entitled to a charge to the effect that he had the right to use such force as was necessary to save the life of the child, even though it was necessary to kill the deceased, it further appearing that the deceased had been fleeing from him, and that by releasing his hold upon the child any danger to it would have been avoided.

*Semble*, that where the punishment imposed by the court is less than the maximum allowed on a conviction for manslaughter, the prisoner cannot complain that the verdict was for murder in the second degree instead of manslaughter.

APPEAL by defendant from *G. W. Ward, J.*, at the Fall Term, 1910, of DAVIE.

*Attorney-General* and *G. L. Jones* for State.

*B. G. Crisp, Aydlett & Ehringhaus* and *W. M. Bond* for defendant.

CLARK, C. J. The prisoner was convicted of murder in the second degree of Eunola Seamon. The prisoner had been convicted of bigamy in marrying the deceased and was sentenced to the Virginia penitentiary. On his return after being pardoned, he found that his wife had obtained a divorce. He then offered to remarry Eunola, which she declined, and subsequently married Seamon. The two children of his marriage with Eunola were in his custody. The prisoner fiercely resented the marriage of the deceased to Seamon, and on several occasions avowed his intention to kill one or both of them. In August, 1909, the deceased went to the house of one Lane, where the prisoner lived, and took one of her children, about two and one-half years old, and carried it to the place where she lived, one-half mile away. Upon hearing this, the prisoner procured a pistol and saying he did not intend to use it unless it was absolutely necessary, put it in his breast pocket. On arriving at Toleson's house where the deceased lived, he went around to the back porch, where he found Seamon, the husband of the deceased, whom he shot twice; the deceased grabbed up the child with her

left arm, followed by the prisoner, who was on her right side. He fired at her once; she fell. She held to the child which he attempted to take from her, but she still clung to it, whereupon he fired upon her a second time while down on the floor.

The first exception was because the court ruled out a question by the prisoner to the coroner, whether from the course of the ball after it struck the body could the shot have been made while the parties were both standing. The witness was not an expert, and the question was properly excluded. Besides, the prisoner admits that he killed the woman with a deadly weapon. There is no suggestion that he shot in self-defense, and if he shot in defense of the child it does not appear that the position of the parties could have any bearing upon the case. The suggestion that he had a right to slay the mother because she would not surrender her child is an aggravation and not a defense. He testified that he told her to turn loose the child; that she said that she did not intend to do so; and that he fired to make her release the child. He says that the child was turning black in the face, and that the mother was holding to the child when she fell. The second shot was fired while she was on the floor, and he said he did not intend to hit her, but to frighten her so that she would release the child. It is not clear which ball was fatal, though both struck her, the pistol being so close to her body that the clothing was scorched. The prisoner having admitted that the killing was done with a deadly weapon, and no excuse appearing, he was guilty at least of murder in the second degree. *S. v. Fowler,* 151 N. C., 731.

The second exception is to the refusal of court to allow the prisoner to testify that he carried a pistol that day because on a former occasion, when the deceased and Seamon started to carry away the children, that Seamon drew a pistol on him, and that he did not intend to use a pistol on this occasion unless necessary. The testimony was properly excluded, because: 1. The prisoner was not on trial for shooting Seamon. 2. The procuring the pistol was prejudicial only if it tended to show deliberation and premeditation, and the prisoner has been acquitted of murder in the first degree.

The third exception is disposed of by what is said in regard

to the second exception. As to the fourth exception the question as to the expert was properly excluded because it did not present to the expert all the vital facts in the case, in the absence of which his opinion could not have any value upon the query whether the prisoner had sufficient mind at the time to understand what he was doing and to know whether he was doing right or wrong. The question did not recite that in July before the prisoner had said that the deceased could not see so much pleasure and that he was going to kill her; that two weeks before the killing he said if she ever came back to Roanoke Island he would kill her; that on Sunday before the shooting he repeated the declaration; that on Wednesday before the shooting he said he was going to Elizabeth City to kill the deceased and Seamon; that when he got the pistol he said he was not going to use it if he could possibly avoid doing so; that he said he put the pistol in his vest pocket because he was afraid it would fall out of his hip pocket while he was running; that he said he shot Seamon because the latter put his hand to his hip pocket, and made a break at him; and that he had just testified on the witness stand that he shot the woman, not intending to kill her, but because he wanted to make her release the child. All these were vital facts and the expert could not give an opinion of any value as to the mental condition of the prisoner, at the time of the killing, upon a hypothetical recital of facts, which omitted these material circumstances. The hypothetical question must be so framed as to fairly reflect the material facts, either admitted or proved. Lawson Expert Ev., Rule 42 (2). As is well said by Chitty Med. Jur., "The opinion of an expert on half the facts of the case on which the jury are to decide must be utterly worthless, for it may well be that the same witness with all the facts before him would pronounce a very different opinion." In *Burgo v. State,* 26 Neb., 642, the court says: "The necessity that the question shall fairly reflect the facts proved or admitted, where it is sought to show insanity as an excuse for crime, is apparent. The plea is in the nature of confession and avoidance. The avoidance—the insanity— is to be shown by the testimony. How can an expert give an intelligible opinion upon that point, or one that the jury would

be justified in acting upon, unless the inquiry reflects the proof
on that question? There must be a fair statement of the case
to render the answer of any value whatever, as a partial state-
ment or one founded on mere fiction, could not fail to mislead
the jury, and probably cause a miscarriage of justice."

Besides, there was no evidence before the court of any fact or
condition about which an expert could be expected to know any
more than a man of average intelligence on the jury. The mere
fact that the witness is an expert does not open the door for any
and all opinions that he may care to express. Here there was
not a scintilla of evidence that the prisoner's mind was ever
diseased nor any suggestion of insanity in his family. There is
no ground for the hypothetical question at all.

The exceptions to the charge cannot be sustained. The judge
properly told the jury that in no view of the evidence could
they render a verdict of not guilty. There was no evidence
tending to show self-defense. The judge did not err in instruct-
ing the jury that if the prisoner shot the deceased and killed
her, and they were not satisfied beyond reasonable doubt, that
the shooting and killing were the result of wilful premeditation
and deliberation, then the defendant was guilty of murder in
the second degree. The prayers for the prisoner, which the
court refused, were to the effect that "if the prisoner believed
that the deceased was killing the child by choking the life out
of it, he had the right to use such force as was necessary to save
the life of the child, even if it was necessary to kill the de-
ceased." As she was clinging to the child merely to prevent the
prisoner from taking it from her, he could have secured the re-
lease of the child simply by desisting, and the prayer was prop-
erly refused. Though the prisoner testified that he did not in-
tend to hit the deceased, he did not contradict the evidence that
his pistol was so close that her clothes were scorched.

The jury might well have convicted of murder in the first de-
gree. His Honor was also lenient in sentencing the prisoner to
nine years in the State's prison. There was no prayer to pre-
sent the phase of manslaughter to the jury, nor was there any
exception for failure to do so. It was not raised by any phase of
the evidence, nor could the defendant have received any preju-

dice, for the punishment imposed by the court was less than half of that which could have been imposed upon a conviction for manslaughter. The case is notable for its abhorrent details, which present no justification for slaying, without provocation, a defenseless and fleeing woman, who had been the prisoner's wife.          No error.