JAMES W. LEAHY v. STATE OF NEBRASKA.

[FILED MARCH 17, 1891.]

1. **Rape.** In an information against one L., for the crime of rape, *held*, that the testimony sustained the charge and that there is no material error in the instructions.

2. ———— : TRIAL: MISCONDUCT OF PROSECUTING ATTORNEY. On the trial of one L. on the charge of rape, the assistant prosecuting attorney on cross-examination asked the accused "if, on the day succeeding that on which it was alleged he committed the crime, he did not go to the residence of one B. and there finding Miss B., the daughter of B., alone, did not attempt to drag her to a lounge," etc., and then stated to the court in the presence of the jury, " We intend to follow this matter up and show that he went right over to B's. and there tried to kiss and hug Miss B. and drag her to the lounge," Miss B. having been

summoned as a witness by the state, and being then present in court. The explanation on behalf of the state is, that in his opinion he, the prosecuting attorney, had a right to follow the defendant up from the time of the alleged crime to the time of his arrest, and show what he did, etc. *Held*, That take either statement as true, and the conduct of the prosecuting officer was unwarranted and prejudicial to the accused.

3. —————— : COLLATERAL ISSUES EXCLUDED. The answer, on cross-examination, of a party on trial for a crime as to any matter not material·to the issue, is conclusive on the party making the inquiry; as the court will not try a collateral question relating to another offense than the one then being tried; hence a statement of the prosecuting officer to the court, in the presence of the jury, that they intended, or in their opinion had the right to prove a criminal assault not connected with the first, is erroneous.

ERROR to the district court for Fillmore county.    Tried below before MORRIS, J.

*Maule & Sloan,* for plaintiff in error.

*William Leese, Attorney General,* and *W. C. Sloan, contra.*

MAXWELL, J.

The plaintiff in error was convicted of rape committed upon one Lizzie Schultz, who at that time was in the employment of Mr. and Mrs. Loomis, who resided about a mile and a half east of Fairmont.    The prosecutrix was called as a witness and testified in regard to the plaintiff as follows :

Q. Where did you see him (Leahy) ?
A. At Mr. Loomis's, in the yard.
Q. At what time in the day ?
A. About two o'clock.
Q. Where did you first see him that day ?
A. In the buggy in the yard.
Q. Did he go there in a buggy ?

A. Yes, sir.

Q. Now, what took place when he first came there?

A. He asked if Mr. Loomis was at home.

Q. You say that he asked you if Mr. Loomis was at home?

A. Yes, sir.

Q. You may state, now, what took place there, in your own way, at that time.

A. I told him that Mr. Loomis was not at home; that he went to Exeter to take Mrs. Loomis to the train, and he said he had some business that he wanted to see Mr. Loomis about, and he said he guessed he would stay and wait awhile and see if Mr. Loomis wouldn't come home; that he would like to see him awful bad. I asked him to come in and have a chair, and he came in. I was combing my hair when he came in, and he asked me to put the hairpin in for me, and I told him I could do that myself. Then I asked him to sit down, and I pulled out a chair for him to sit down, and he sat on the lounge, and I went in the kitchen, and was going to commence to iron, and he sat there on the lounge awhile, talking, and asking me questions, and I answered them as I could, and pretty soon he came in the kitchen, and went and looked out of the window, and he sat down there awhile, and then he came up and he was going to kiss me, and I slapped him, and pushed him away, and he came up to me and grabbed me and carried me in the other room, and laid me on the lounge there, and I tried to get away from him all I could; I always tried to get away from him."

Her testimony is to the effect that the plaintiff in error resorted to force, and that she resisted to the extent of her ability to prevent the consummation of the act, and there are a number of circumstances tending to corroborate her testimony. It is unnecessary to review the evidence at length, and there is no substantial error in the instructions. The proof of guilt is sufficient.

2d. On the trial of the cause the county attorney was assisted by a deputy who seems to have cross-examined the plaintiff in error, and, among other questions, asked him if he did not go to the residence of one B. on the day succeeding that on which he had made the assault on Miss Schultz, and finding Miss B., a daughter of B., alone, attempt to kiss her and drag her to a lounge. This was objected to, and the objection sustained.

In the affidavit of John P. Maule, the attorney for the plaintiff in error, he swears that "the assistant attorney said in the presence of the jury, and in their hearing, ' We intend to follow this matter up, and show that he went right over to B.'s, and there tried to kiss and hug Miss B. and drag her to the lounge,' to which language and the speaking thereof, in the presence of the jury, the attorney for the accused, then, and there, and while the same was thus being spoken, objected and excepted. At this time Miss B. was sitting in the court-room in the presence of the accused and the jury. Miss B. was present at the trial, at the instance of the prosecuting attorney."

Practically this affidavit is not denied, the statement of the prosecuting attorney being that he stated to the court that in his opinion he had a right to follow the defendant from the time of the alleged crime to the time of his arrest and to show what he did. To which the court answered, "No," when the prosecutor desisted from asking further questions on that point. The explanation on the part of the state in effect admits all that is claimed on behalf of the plaintiff in error.

That this statement and the attending circumstances were of the most prejudicial character cannot be doubted. The second offense, if committed, was entirely disconnected with the first. The fact that Miss B. was summoned as a witness, by the state, and sitting in plain view in the court room, in connection with the statement of the assistant prosecuting attorney of what he intended to prove, or if

we take the prosecuting attorney's statement, what they claimed they had a right to prove, brought before the jury a second offense of the same nature, although in a less degree than that with which the accused was then on trial. When a question has been asked a person on trial for a crime, which is not material to the issue, but collateral, he will not be compelled to answer; but if an answer is given it will be conclusive on the party making the inquiry, as the court will not try a collateral matter relating to questions in dispute. (Maxw., Cr. Proc., 615, 616, and cases cited.) It was error therefore for the prosecuting attorney to make the statement which he did in the presence of the jury.

It is the duty of the officer prosecuting to conduct the trial of a criminal case according to the established rules. He acts in a semi-judicial capacity and is supposed to act alone from principle and without bias or prejudice.

The state has guaranteed to every one a fair trial, and such trial cannot be had if the prosecution can resort to tricks to secure a conviction. If such practice was sanctioned it would result in many cases in the conviction of innocent persons.

The plaintiff in error was on trial for the crime charged in the information. So far as appears he had not been charged with any other offense, and certainly was not on trial for the second. The statements of the attorney were improper and in the highest degree prejudicial, and for those causes the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

THE other judges concur.