Knights v. State.

GEORGE KNIGHTS v. STATE OF NEBRASKA.

FILED MARCH 8, 1899.   No. 10561.

|      |     |
| ---- | --- |
| 58   | 225 |
| 58   | 467 |
| 58   | 225 |
| 61   | 279 |

1. Criminal Law: INSTRUCTIONS: ASSUMING FACTS. In the trial of a criminal case the court is not ordinarily justified in assuming the existence of any material fact put in issue by the plea of not guilty; but there is not an assumption of any fact in an instruction plainly professing to be a mere statement of the material averments of the information.

2. ——: ——: INSANITY: BURDEN OF PROOF. In a criminal prosecution it is reversible error to instruct the jury upon the question of insanity that the burden of proof shifts from the prisoner to the state during the progress of the trial.

3. ——: ——: ——. But the court in its charge may properly say that when the presumption of sanity encounters opposing proof the burden is upon the state to satisfy the jury, by evidence beyond a reasonable doubt, that the accused was sane at the time he committed the alleged criminal act.

19

4. ———: ———: ———. One suffering under a defect of reason to such an extent that he was incapable of distinguishing between right and wrong with respect to a particular act is not amenable to the laws against crime for having committed such act.

5. ———: ———: ———. And it is prejudicially erroneous to inform the jury in a criminal case, where the defense is insanity, that want of capacity on the part of the prisoner to understand the nature of the act in question, at the time of its commission, is necessary to render him irresponsible.

6. ———: COUNSEL FOR STATE. Whether the court might properly permit private counsel in a criminal case to make an argument to the jury on behalf of the state when such counsel did not appear in his professional character until the evidence was closed, *quære*.

7. ———: EVIDENCE OF OWNERSHIP. It is competent to prove the ownership of a store building by parol evidence when it does not appear that such building is real estate.

8. ———: EVIDENCE OF OTHER CRIMES. Where a person is charged with the commission of a specific crime, testimony may be received of other similar acts, committed about the same time, for the purpose only of establishing the criminal intent of the accused.

9. Arson: INSURANCE: EVIDENCE OF CONTRACT. On the trial of a person informed against for burning property with intent to prejudice an insurance company, where the accused refuses to produce the policies of insurance, secondary evidence is competent to show the contents of the policies, that they were made out and delivered by an authorized agent of the companies, and that defendant was claiming indemnity under them.

ERROR to the district court for Washington county. Tried below before POWELL, J. *Reversed.*

*Duffie & Van Dusen* and *Jesse T. Davis*, for plaintiff in error.

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy Attorney General,* for the state.

SULLIVAN, J.

In the district court of Washington county George Knights was convicted of the crime of arson and sentenced to imprisonment in the penitentiary for a term of twelve years. The first count of the information

charged the burning of an insured stock of merchandise owned by the defendant, and the second charged the burning of a leased store building in which the property was kept. The jury found in favor of the state upon both counts.

Exception was taken to the fifth instruction on the theory that it assumes that the merchandise in question was insured and that the insurer was a corporation. This paragraph of the charge plainly professes to be a statement of the facts necessary to be established to warrant a conviction; and it seems to us that neither a casual nor critical reading of it could possibly lead a person of average intelligence to suppose that the existence of any essential fact was assumed by the court. Doubtless a more perspicuous presentation of the issues might have been made; but the thought of the instruction is evident and the language sufficiently apt.

In relation to the defense of insanity, upon which the prisoner relied, the court said to the jury in the twelfth instruction: "You are instructed that the law presumes that every person is sane, and it is not necessary for the state to introduce evidence of sanity in the first instance. When, however, any evidence has been introduced tending to prove insanity of an accused, the burden is then upon the state to establish the fact of the accused's sanity, the same as any other material fact to be established by the state to warrant a conviction. If the testimony introduced in this case tending to prove that the defendant was insane at the time of the alleged burning described in the information raises in your mind a reasonable doubt of his sanity, at the time of the alleged burning, then your verdict should be acquittal." It is contended that this instruction gave the jury to understand that the burden of establishing his insanity rested upon the defendant up to a certain point in the trial, and was then shifted from him to the state. *Snider v. State*, 56 Neb. 309, is cited as authority for this contention. Whatever may be said of the meaning of the instruction con-

sidered in the *Snider Case,* there can be no room to doubt that the court, in the instruction now under consideration, stated the correct doctrine in unmistakable terms. In this case the jury were informed that the law presumes sanity, but that when the defendant produced evidence tending to prove insanity, the state was charged with a burden which did not previously rest upon it. The court did not say, nor imply, that the burden of proving insanity was ever on the accused, or that there was a shifting of the burden from him to the state. The substance of what the court did say was, that when the legal presumption of sanity encountered opposing evidence, the law then, for the first time, imposed on the state the *onus* of showing the prisoner's sanity by the proper measure of proof.

The thirteenth instruction was also excepted to, and its correctness is now vigorously challenged. It is as follows: "You are instructed that insanity which renders a person irresponsible for an act is such a diseased condition of the mind as renders the person incapable of understanding the nature of such act and incapable of distinguishing between right and wrong with respect to such act. So in this case, if the evidence introduced tending to show that the defendant was at the time of the fire incapable of understanding and knowing what he was doing, and that at such time he could not distinguish between right and wrong, raises in your mind a reasonable doubt of the defendant's sanity at the time of such fire, then you should acquit him." By this instruction the jury were plainly told that they might acquit the defendant, on the ground of insanity, only in case (1) he was at the time of the fire incapable of understanding the nature of his act, and (2) that he was at the same time incapable of distinguishing between right and wrong with respect to that act. Such is not the law, and the giving of this instruction was an error fatal to the conviction. Ordinarily, insane persons comprehend the nature of their acts. When they take life or destroy

property they usually know what they are doing, and
often choose means singularly fitted to accomplish the
end in view.   The jury in this case may have believed
that the defendant applied a lighted match to the prop-
erty in question understanding well that combustion
would follow and that the store building and its contents
would be reduced to ashes, and they may have refused,
for that reason, to acquit him, although reasonably doubt-
ing his capacity to distinguish between right and wrong
with respect to the act.   In the answer of the English
judges to the questions propounded by the House of
Lords, as a result of the acquittal of McNaghten for the
killing of Drummond (*McNaghten's Case*, 10 Cl. & Fin.
[Eng.] 200), Chief Justice Tindal, speaking for him-
self and his associates, among other things, said that
there is no criminal responsibility where, "at the
time of the committing of the act, the party accused
was laboring under such a defect of reason, from
disease of the mind, as not to know the nature and
quality of the act he was doing; or if he did know
it, that he did not know he was doing what was
wrong."   The rule thus announced has been, since 1843,
the unquestioned law in England, and it is now the gen-
erally accepted doctrine of the American courts.   It was
recognized by this court in *Wright v. People*, 4 Neb. 407,
and has been since frequently approved. (*Hawe v. State*,
11 Neb. 537; *Hart v. State*, 14 Neb. 572; *Thurman v. State*,
32 Neb. 224.)   In *Hawe v. State* it was said: "And where
an individual lacks the mental capacity to distinguish
right from wrong, in reference to the particular act com-
plained of, the law will not hold him responsible."

Another assignment of error earnestly pressed upon
our attention relates to the action of the court in permit-
ting W. S. Cook, Esq., a member of the Washington
county bar, to make the opening argument for the state.
We gather from the record that Messrs. Frick & Dolezal
had been appointed by the court at a former term to as-
sist the county attorney in conducting the prosecution;

that Mr. Dolezal was present at the trial and an active
participant therein; that Mr. Cook, who was the local
agent of the companies which had insured the property
in question, was a witness for the state and sat during
the trial with the county attorney and his assistant, ad-
vising and consulting with them. Before the evidence
was closed he did nothing, so far as we can learn, to in-
dicate that he was connected with the case in the charac-
ter of an attorney for the state. When his right to make
an argument was challenged he made it appear that he
had recently formed a law partnership with Mr. Dolezal,
whereupon the defendant's objection was overruled and
an order entered substituting the new firm for the old.
As the question argued cannot arise when the cause is
again tried, we need not decide it; but it will not be out of
place to remark here that we seriously doubt the propri-
ety of the court's action. The statute provides that the
county attorney, in the trial of any person charged with
a felony, may, under the direction of the court, procure
such assistance "as he may deem necessary for the trial."
This would seem to contemplate the selection and ap-
pointment of assistant counsel before the commencement
of the trial. The spirit and policy of our laws recognize
the right of a defendant in a criminal case to be informed
in advance not only of the nature of the accusation, but
also of the forces that are to be marshaled against him.
In public prosecutions fairness is a cardinal virtue which
the representatives of the state should not be permitted
to ignore. A defendant should not be forced to submit
the question of his guilt or innocence to a jury organized
with special reference to their capacity or inclination to
receive and assimilate the arguments of private counsel
called from ambush after they have been chosen. Some-
times a peremptory challenge may be used most effect-
ively to exclude from the jury-box a frᵉend, relative, or
client of one of the attorneys for the state. We are en
tirely satisfied that the failure of Mr. Cook to appear in
the character of an attorney in the earlier stages of the

Knights v. State.

case was not intended to be tactical; but it may, neverthe-
less, have given the state an unfair advantage over the
defendant. In selecting a jury for the trial of a criminal
case a defendant usually makes his adjustments with
reference to the relation of individual jurors to opposing
counsel, so far as he may know what they are. This is his
right. The peremptory challenges are his to use for his
own advantage as reason or instinct may suggest.

We pass now to the testimony of Mr. Unland touching
the ownership of the store building described in the in-
formation. It is contended on behalf of the defendant
that the court received parol evidence tending to prove
the title to real property, and that its action in this re-
gard was prejudicial error. It is, of course, true that every
fact must be established by the best evidence attainable,
and that secondary evidence is not admissible until some
legal excuse has been given for failing to produce the
original. But here the ownership of land was not in is-
sue, and there was no proof whatever that the building
in question was real estate. Mr. Unland testified that
he built it and that it was his property. To hold that
the ruling of the court was erroneous we would have to
presume that building was realty. This we cannot do.

The next error assigned relates to rulings of the court
in admitting evidence tending to show that on the night
the Unland building was burned the defendant set out
other fires in adjacent buildings. The testimony was
properly received, not for the purpose of showing the
commission of distinct crimes, but to establish a criminal
design on the part of the defendant. The state was not
only required to show that the defendant ignited the Un-
land store, but it was required to go further and satisfy
the jury that the act was intentional and not an accident.
The effect of the evidence was properly limited by an in-
struction, and its submission to the jury was not legally
prejudicial. (State v. Raymond, 53 N. J. Law 260; Com-
monwealth v. McCarthy, 119 Mass. 354; Pierson v. People,
79 N. Y. 424; Rice, Criminal Evidence 453.)

Other assignments of error have reference to the means employed to prove that the stock of merchandise and store building mentioned in the information were insured at the time of the fire. We think the evidence introduced was the best obtainable, and that is all the law requires. The policies were in possession of the defendant, and he refused to produce them after being notified to do so. It was then competent to show their contents, that they were made out and delivered by an authorized agent of the companies, and that the defendant was claiming indemnity under them. (*State v. Mayberry*, 48 Me. 218; *McGinnis v. State*, 24 Ind. 500; *State v. Gurnee*, 14 Kan. 111; Rice, Criminal Evidence 46.) The petition in error contains many other assignments, but as they have not been discussed by counsel they will not be considered. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.