Shannon v. State.

---

MARY SHANNON v. STATE OF NEBRASKA.

FILED DECEMBER 31, 1923.    No. 23396.

1. **Criminal Law: SANITY: BURDEN OF PROOF.** One who is charged with crime is presumed in the first instance to be sane. But when that presumption has been rebutted, it devolves upon the state to show by evidence beyond a reasonable doubt that the accused was capable of distinguishing between right and wrong

Shannon v. State.

with respect to the act committed in order to secure his conviction. *Held*, in this case, that there was sufficient evidence to justify a jury in so finding.

2. ———: WEIGHT OF EVIDENCE. "The jury must determine the weight of evidence adduced, and its estimate thereof will not be interfered with, unless it is clearly wrong." *Whitman v. State*, 42 Neb. 841.

3. ———: INSANITY: INSTRUCTION. A direction to the effect that the law recognizes no form of insanity, or uncontrolled impulse or temper, even though the mental faculties be disordered or deranged, which will provide immunity from punishment for a criminal act, so long as the person committing the act has the capacity to know what he is doing and to understand that his act is wrong, is not erroneous, particularly if the court directs in connection therewith that one who has the power of mind to distinguish between right and wrong with respect to the criminal act at the time of committing it is to be regarded as legally sane, and held criminally responsible.

4. ———: INSTRUCTIONS. "Where the court on his own motion has correctly instructed the jury on all the issues presented by the record and evidence in a criminal case, it is not error to refuse to give the instructions requested by the defendant." *Reed v. State*, 75 Neb. 509.

ERROR to the district court for Douglas county. CHARLES A. GOSS, JUDGE. *Affirmed: Sentence reduced.*

*Jamieson, O'Sullivan & Southard* and *Charles P. Rapp*, for plaintiff in error.

*O. S. Spillman, Attorney General, Marcus L. Poteet* and *Lester L. Dunn*, contra.

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

Mary Shannon, the plaintiff in error, a vigorous young married woman of 38, broke into the quarters of an aged neighbor in the night-time and told her that she had come to finish her. In the struggle that ensued, as her victim attempted to push her away and to expel her from the house, plaintiff in error bit her finger so badly that her

arm became infected and subsequently had to be amputated. It appeared that Mrs. Booth, the old lady assailed, had incurred the enmity of Mrs. Shannon by protesting when the latter beat her rugs so that the dust fell from them upon some newly-washed curtains which were drying upon the line, or so Mrs. Booth testifies.

Mrs. Shannon denies this incident, and says that she had scarcely any acquaintance with Mrs. Booth, and bore her no ill will whatever. She testified that she was not addicted to the use of liquor, but that on the occasion in question, owing to the fact that she was suffering from cramps and from painful menstruation, she had bought some corn liquor, and had drunk about a pint and three-quarters of it during the day preceding the assault. In consequence, she says, her mind was a blank from the time that she took her last drink, about 7 or 8 o'clock in the evening, till she found herself in jail the next morning. The liquor was bootleg stuff containing 1 per cent. of fusel-oil, and very dangerous. A doctor testified that having taken it as she said, Mrs. Shannon would be unable to distinguish between right and wrong.

Plaintiff in error was duly charged with the crime of mayhem, and was tried, convicted and sentenced to five years in the penitentiary. She comes here assigning the following errors. (1) The verdict was contrary to law; (2) contrary to the evidence; (3) not sustained by sufficient evidence, the "same being less than proof of the defendant's guilt beyond a reasonable doubt;" (4) the court erred in giving its ninth instruction; (5) in refusing to give instruction 1 requested by the defendant; (6) in refusing to give instruction 2 requested by the defendant; (7) in refusing to give instruction 6 requested by defendant; (8) the state failed to prove the sanity of the accused beyond a reasonable doubt; (9) the state failed, after the defendant had interposed the defense of alcoholic insanity, to prove the sanity of the accused by evidence beyond a reasonable doubt; (10) the sentence is excessive.

While other errors are set forth in the petition in error,

it is expressly stated in defendant's brief that she relies for reversal only upon the foregoing.

In the main the contentions of the plaintiff in error are two. First she asserts that the state stands in the position of one who rests his case upon a rebuttable presumption, completely rebutted. This would, if true, be sufficient to entitle her to reversal and discharge. When the defendant proved by her expert testimony, opinion evidence though it was, that the bootleg whiskey which she had taken robbed her of power to distinguish between right and wrong and rendered her an unconscious actor in the assault upon Mrs. Booth, ir devolved upon the prosecution, if it had not already adduced affirmative proof of defendant's sanity at the time of said assault, to make such proof upon rebuttal. Such is the doctrine of the cases cited by the plaintiff in error. Such, in effect, was also the eighth instruction of the trial court, as follows:

"The defendant in this case has interposed the defense of temporary insanity, caused by the use of alcoholic stimulants. Upon this point you are instructed that the law presumes that every person is sane and it is not necessary for the state to introduce evidence of sanity in the first instance. When, however, any evidence has been introduced tending to prove that the condition of the mind of the accused was such, at the time of the commission of the act charged, that she could not be held legally responsible for her act, then the burden is upon the state to establish the fact of the accused's criminal responsibility for her act, the same as any other material fact to be established by the state beyond a reasonable doubt to wararnt a conviction. The evidence upon this point you should consider the same as any other evidence introduced in the case, giving to it such weight as in your judgment it should receive."

This instruction is strictly according to the Utah case, *State v. Brown*, 36 Utah, 46, upon which the plaintiff in error depends. But in that case it is said that all of the evidence, apart from the presumption, was to the effect that the accused was insane. In this case it is not so. Mrs.

Shannon herself testified that a month or two before she bought and drank a pint of the same kind of liquor without becoming drunk. Mrs. Booth testified that Mrs. Shannon swore at her and threw slop on her steps, and that in addition to dirtying her curtains she told her that she did it purposely. There was enough in the case of the state in chief to indicate that the accused meditated the punishment of Mrs. Booth and prepared herself by resorting to liquor to administer it. If so, she could not escape the conse-quences on the plea that the liquor made her wild, because the premeditated intent goes through to the act. *Kraus v. State*, 102 Neb. 690.

Anyway, if supporting evidence be adduced, sufficient in connection with the presumption to sustain a finding that the accused knew what she was doing and had understanding enough to determine whether it was right or wrong, then and in such case the question of whether or not she was capable of forming an intent was for the jury. It is for the court to say, we think, only when it can decide with certainty, and as a matter of law, that the evidence on the point is so lacking in probative force that the jury should not be permitted to declare that it is convinced beyond a reasonable doubt of the truth of the charge.

But there was rebuttal tending to prove the sanity of the defendant. It must be remembered that the desk sergeant at the station testified that when Mrs. Shannon was brought in, the following conversation was had between them:

"A. I asked her what was the matter that she bit this woman's finger, and she says, 'Well, I had trouble there;' I turned to the captain at the time, and I says, 'This charge ought to be changed to mayhem;' and this Mrs. Shannon says, 'Well,' she says, 'Mayhem be damned; I ought to have knocked her head off.' "

This conversation indicates a memory and understanding of what had transpired, and a mind that could measure what she had done with what should have been done. It evinces not merely knowledge of what she was doing in her

attack upon Mrs. Booth, but also, though we may not agree with her conclusion, a perception in regard to the right or wrong of it. Taken in its entirety, what she said strongly tends to show her mental capacity. But, more than this, it indicates a settled intent to injure, and a motive for doing what she did. We do not overlook the fact that the conversation referred to occurred perhaps 30 minutes after the assault. But there is nothing in the record to indicate that the passage of so short a time would make any appreciable difference in the mental state of the accused, and in the absence of proof to the contrary we must consider it the same.

In addition to this, the conversation of the accused with her brother in the morning after argues a memory of what she had done. She wanted her brother to get her out. "You can't tell what will happen," she said. This was before she had been arraigned on the charge against her. Inferentially it may be said that she knew what she was doing when she broke in and assaulted Mrs. Booth, and was apprehensive of the consequences. She remembered her act, realized that she had performed it knowingly, and feared, as she said to her brother then or later, that they would send her "over the road this time."

Conceding then the rule contended for, it does not seem applicable in the instant case. There was rebuttal testimony supporting the presumption of sanity which was at once sufficient to take the case to the jury and to justify the verdict returned. "The jury must determine the weight of evidence adduced, and its estimate thereof will not be interfered with, unless it is clearly wrong." *Whitman v. State,* 42 Neb. 841. There was evidence enough adduced to justify the jury in finding that Mrs. Shannon was sane.

The giving of instruction 9 of the court's charge is another assignment of error made prominent, not only in the brief, but upon oral argument. The instruction is assailed as a misstatement of law, and also as leading the jury to believe that, if the accused knew what she was doing, she should be convicted. In regard to the latter,

Shannon v. State.

she relies upon *Knights v. State*, 58 Neb. 225. But the vice of the instruction in *Knights v. State* was that it was therein stated that, in order to escape conviction, the evidence must show a condition of mind incapable of understanding the nature of the act done. The court very properly said that a person thoroughly insane, and not able to distinguish between right and wrong with respect to the thing about to be done, might know perfectly well the nature and consequences of the act—that the fire would consume, the blow bruise, the bite lacerate, etc. Nothing of the kind was charged in the instruction here.

The next contention touches a real fault in the instruction, but not a fatal one. For while the court instructed the jury in one part of said instruction that they should acquit the defendant if they found that at the time of committing the act she was unable to distinguish between right and wrong, and while this was not of itself a complete and correct instruction in a case like this, the court afterward in said instruction stated the proper rule, viz., that the defendant might be convicted if the jury found that she was capable of distinguishing between right and wrong with respect to the act charged. *Kraus v. State*, 108 Neb. 331. And the last sentence of the instruction practically repeats the correct rule, as follows: "The law recognizes no form of insanity, or uncontrolled impulse or temper, even though the mental faculties be disordered or deranged, which will furnish one immunity from punishment for an act declared by the law to be criminal, so long as the person committing the act had the capacity to know what he was doing and the power to know that his act was wrong." We have seen that the doctrine of *Knights v. State, supra*, is not applicable to this sentence as directing a finding against the accused, if she knew what she was doing; and we should now observe that the statement is not only unexceptionable as a statement of law, but a bar to any misconception on the part of the jury. The power to know when an act is wrong necessarily involves knowledge of what is right with respect to such act. A comparison of the right and wrong

of a thing is what gives rise to a knowledge that it is wrong. See fifth paragraph of syllabus of *State v. Brown, supra.*

Instruction 9 cannot be said to be a model one, but we are convinced that the jury were not misled by it, and that no substantial miscarriage of justice occurred because of it.

The complaint of the accused that the court was in error in refusing to give instructions 1, 2, and 6, tendered by her, is equally without merit. The error in the case of *Latimer v. State,* 55 Neb. 609, was not repeated in the case at bar. In this case the court did not predicate the right of Mrs. Shannon to an acquittal upon a derangement of mind equivalent to insanity or total lack of reason.

In instruction 5 of the charge of the court the jury were told that it was essential that the state prove an intent on the part of the accused to maim and disfigure. Instruction 7 of the charge defines the intent necessary to conviction. Instructions 8 and 9, already discussed, deal with the matter of intent as affected by the intoxication established by the evidence. Every point in the requests referred to, so far as pertinent, was presented to the jury in these instructions given by the court upon his own motion. "Where the court on his own motion has correctly instructed the jury on all the issues presented by the record and evidence in a criminal case, it is not error to refuse to give the instructions requested by the defendant." *Reed v. State,* 75 Neb. 509.

Enough has been said to show that the trial court did not err in any of the respects referred to and relied upon. It is obvious from the foregoing discussion that we are of the opinion that the verdict was not contrary to law and the evidence, but was sustained by the evidence. It remains to consider the tenth assignment, that the sentence was excessive. We are sensible that five years in the penitentiary is a grievous punishment to one who is not, as we assume, of the criminal class, though her crime was a crime of violence. It is not probable that she intended the ultimate result of her crime. Such result could not, in fact, have been within her contemplation. We are inclined to

temper justice with mercy, and her sentence will be reduced to two years.

No error appearing in the record, the judgment of the district court, as above modified is affirmed.

AFFIRMED: SENTENCE REDUCED.