JAMES O. SWOGGER V. STATE OF NEBRASKA.

FILED MARCH 7, 1928. No. 25509.

*J. T. McCuistion, Herman G. Schroeder* and *J. W. James,* for plaintiff in error.

*O. S. Spillman, Attorney General, Lloyd Dort, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

HOWELL, J.

This is a rehearing in case reported in 115 Neb. 621. For sufficient reasons the opinion there reported is set aside. Plaintiff in error will be referred to as defendant and defendant in error as the state. Defendant was convicted and sentenced on one of three counts, each charging, on separate dates, a statutory crime committed upon Mary Leach, a 15-year-old girl. There are nine assignments of error, four of which relate to instructions Nos. 1, 5, 9, and 10. No. 1 is said to be erroneous because the trial court submitted all three counts. In the light of instruction No. 12 telling the jury it could find defendant guilty of only one count, we see no error there. Until verdict of guilty, it

could not be known to which count their verdict would relate.

If the evidence should show the girl to be chaste before having relations with defendant, and became unchaste by virtue of his acts, the jury might find him guilty of one and not of the other two. It might find him not guilty of the first and second counts and guilty of the third. All depends upon which particular count guilt might be found.

As to instructions Nos. 9 and 10, it is difficult to see wherein they are prejudicially erroneous in themselves. When they, and other instructions, are considered in connection with certain testimony permitted to be received, a difficult question arises which we will notice later. The insufficiency of the evidence will not be considered, in view of our conclusions on the erroneous admission of testimony. Palpable error is not discovered in admission of evidence prior to the cross-examination of defendant. No reference was made to divorce proceedings between defendant and his wife, or improper conduct toward another woman, until defendant was being cross-examined.

Over objections, the county attorney, on cross-examination, repeatedly asked defendant about a petition for divorce previously filed by him, the different charges therein lodged against his wife, his purpose of instituting the suit, and its termination by amicable adjustment. As there had been testimony that defendant contemplated marrying the girl when he could get rid of his wife, such evidence, if in proper order and time, might not be said to constitute reversible error, it being relevant, as corroboration, in an attenuated way, of the girl's testimony as to intimacy between her and the defendant. However, such evidence spent its legitimate force when showing that the defendant sought to rid himself of his wife by divorce, without parading before the jury charges which were cruel and evilly disposed. On another trial this excess zeal may not be shown, and we make no further comment, further than it accentuated later and more certain error.

The same applies to defendant's cross-examination when

asked if he had not told a woman witness that he would give her a fine silk dress if she would help him get his wife to Hastings so he could get a divorce. Defendant was asked by the county attorney if he had not, on a certain occasion, gone to the home of a Mrs. Redinger and there conducted himself in a highly improper sexual manner toward her, offering her $5, putting his hand on her person and pushing her around the room. After a denial of all such transactions, the county attorney twice asked defendant if he was "as sure of that as the other things you have testified to,"—"as sure of everything else that you have testified to here." These were improper questions and should not be put to any witness.

The apparent purpose of such questions is to lay a foundation for false impeachment argument to the jury upon an immaterial matter, to prove the defendant unworthy of belief in other matters testified to by him, vital to his liberty. Having interrogated the defendant about his conduct toward Mrs. Redinger, on cross-examination, and getting his denial, Mrs. Redinger was called on rebuttal and testified to shocking conduct of the defendant toward her.

The crime with which the defendant stood charged has three elements—(a) carnal knowledge, (b) of a girl under 18 years of age, (c) not having been previously unchaste. Neither motive, intent, nor guilty knowledge is involved. Only in crimes involving motive, intent, or guilty knowledge may evidence of independent crimes, wholly disconnected with the one charged, be received. *Leedom v. State,* 81 Neb. 585, is urged as affording ground for reversal. It is not in point. Leedom was charged in one count with a similar crime committed July 20, 1906, and divers subsequent times, without fixing the dates. Counsel for defendant contends some jurors may have found the defendant guilty on one charge, and others on another. The fact that the jury, in the instant case, rendered a verdict of guilty on three counts was corrected, by the jury itself, when instructed by the court to return to the jury room, by

finding guilt in the first count and no guilt on the second and third.

We now come to the application of the evidence to several instructions of the court. Instruction No. 9 told the jury that the defendant "cannot be convicted upon the uncorroborated evidence alone of the injured female, if you find it is without corroboration by the facts and circumstances shown in the case." Then followed, "corroboration means to confirm," and it may be by "any facts and circumstances confirming the testimony of the injured female." Laying to one side whether this is a sufficient definition, we come to instruction No. 11 relating to the defendant as a witness. The jury were given the usual cautions as to disregarding defendant's testimony for no other reason than that he is defendant, and told it would not be required "to receive" his evidence "as true." Thus, the instruction permitted discrediting the defendant by any testimony the court had received. No. 15 told the jury they were the sole judges of the credibility of witnesses and that they should take into consideration, among other things, "all the evidence and facts and circumstances proved tending * * * to contradict" the defendant, *i. e.*, if the jurors believed Mrs. Redinger's testimony as to the episode related by her—denied by the defendant—they might discredit all of his testimony.

The instructions themselves are not bad, but the testimony referred to is accentuated by what the court said. The court told the jury his instructions were binding. Without prolonging this discussion, we call attention to *Matters v. United States*, 244 Fed. 736, a prosecution for violation of the national banking law, where the insolvency of Matters was a material issue. Evidence was introduced that Matters got insurance money from a widow, which came from her husband's life insurance, which Matters could not repay. The court said Matters was not on trial for defrauding a widow. At page 739, the court said: "Conceding the insolvency of Matters was material, * * * it did not justify the admission of the evidence," because "the

primary effect of the evidence was to show that Matters had attempted to defraud Mrs. Johnson out of her money." It was said further: "The effect, if any, of the evidence upon the real issue in the case being tried was so incidental and small that it would be lost, so far as the jury was concerned, in the presence of those features of the testimony to which we have adverted. The introduction of the evidence in our judgment prevented a fair trial."

It has been long recognized that the charge of rape is one of the most difficult to defend. A charge of statutory rape inspires resentment as almost no other charge can do. The fact that the verdict was guilty on three counts, in direct violation of the instructions of the court, is not without significance. To charge an infamous crime is no proof thereof, although a mob-spirit is often aroused thereby. Tried as this defendant was, a small amount of friction could easily fire the minds of jurymen. In effect, the state's attorney, at oral argument, with commendable frankness, conceded error in the admission of the testimony indicated, unless this court will almost revolutionize tried and wise rules relating to the introduction of evidence in criminal cases. We are not inclined to do this. The evidence is sought to be justified by the fact that defendant put his character in issue. There was no evidence offered by the state on that point, except specific instances of dereliction, which was improper.

Eberly, J., in his report for rehearing, called attention to *Nickolizack v. State*, 75 Neb. 27, which, in almost every essential, is like this case. The syllabi in the *Nickolizack* case are decisive, and, as pointed out by Eberly, J., are a reannouncement of *Leahy v. State*, 31 Neb. 566, and *Myers v. State*, 51 Neb. 517, and cited in *Flege v. State*, 93 Neb. 610, 626, and *Abbott v. State*, 113 Neb. 524, 527.

For the reasons stated, the former opinion of this court will not be adhered to, and the conviction and sentence of the defendant will be reversed.

REVERSED AND REMANDED.

Goss, C. J., dissents.

ROSE, J., dissenting.

In setting aside the conviction of defendant, who was found guilty of rape upon a female child, the majority in their opinion departed from correct rules of law and mandatory requirements of valid statutes enacted by the legislature to protect chaste female children and society at large from the outrages of ravishers.

Before the legend that "The child is the pillar of the State" was penciled in the mural decorations of the new capitol, the legislature by statute denounced the ravishment of a female child, not previously unchaste, as rape; by statute permitted a conviction for rape upon the uncorroborated testimony of the ravished victim; by statute required the supreme court in reviewing a conviction for ravishment to disregard technical errors not resulting in a miscarriage of justice.

The power to dissent imposes upon me the judicial duty to make the public records of the supreme court show that the opinion and the judgment of the majority violate statutes and rules of law essential to the administration of justice and to the protection of children and the public at large from the appalling acts of ravishers. This duty requires a partial outline of competent evidence and necessary conclusions that convinced the jury and the trial court of defendant's guilt beyond a reasonable doubt.

The date of the felony charged was January 25, 1926. From August, 1925, to March, 1926, prosecutrix, the ravished female child, made her home with her parents, two sisters and four brothers on a Thayer county farm managed by defendant. In the meantime her family resided in a house on the farm and the defendant resided with them or in another house on the same farm. The father of prosecutrix and her oldest brother were in the employ of defendant, working on the farm, each receiving stipulated wages. Defendant mingled with the members of the child's family. Prosecutrix was 15 years of age December 21, 1925. She was therefore 35 days older January 25, 1926, the date of the ravishment. She testified positively

to facts showing that the felony charged was committed at night on the latter date in her own home where defendant was a guest, while all the members of the family, except herself and her bedfast mother and two infants occupying beds in one of the rooms, were absent from home in defendant's automobile.  The evidence showed that prosecutrix was ravished and the family physician testified at the trial that she was pregnant.  Evidence of her chastity before ravishment to which she testified was uncontradicted.  The opportunity to commit the felony was shown.  For several months defendant and prosecutrix were at times alone on trips in an automobile.  Defendant himself so testified.  Disinterested witnesses saw him embracing and kissing her in a room in her own home.  Though a married man with a divorce suit pending, he told others prosecutrix was to be his wife when he got rid of his present one.  These facts were shown by competent evidence regularly and properly admitted.  It was impossible for defendant to be an honorable suitor.  He was a married man 58 years of age.  He was bound by impulses of decent manhood, if he had any, to protect this child from his seductive arts and from ravishment, she being too young to consent to the felonious act.  He had the privileges of her home.  Her father and a brother were his employees.  Her mother baked bread for him sometimes.  All members of her family who could have protected her were absent.  The direct evidence of the ravishment and the competent corroboration were complete and convincing beyond the possibility of reasonable doubt.  No jury fit for service would have reached any other conclusion, even if there had been no deviation from technical procedure.

If competent testimony bearing the stamp of truth is permitted to make an honest appeal to reason and judgment, defendant not only intentionally planned and designedly committed the felony charged, but he connected this child by a ravisher's blood with the immortality of human life and by his denial of guilt added perjury to his other infamies.

The statute under which defendant was prosecuted and convicted provides:

"If any male person, of the age of eighteen years or upwards, shall carnally know or abuse any female child under the age of eighteen years, with her consent, unless such female child so known and abused is over fifteen years of age and previously unchaste, shall be deemed guilty of a rape, and shall be imprisoned in the penitentiary not more than twenty nor less than three years." Comp. St. 1922, sec. 9551.

Neither this nor any other statute of Nebraska requires corroboration. Statutory law is to the contrary. The majority not only follow erroneous decisions requiring corroboration but destroy proper means of corroboration. To hold contrary to statute that corroboration is necessary and by judicial utterance strike down legitimate means of corroboration is to modify, amend or partially repeal the statutory protection of chastity. The majority limit or modify and partially repeal the statute and usurp and exercise legislative power. To that extent the will of the legislature is defeated. A statute violated by the decision is in this language:

"So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the legislature of this state, is adopted and declared to be law within the state of Nebraska." Comp. St. 1922, sec. 3085.

This statute adopted that part of the common law permitting a conviction for rape on the uncorroborated testimony of the prosecutrix. The legislature made that part of the common law adopted the law of Nebraska. What part of the common law applicable to this case was adopted? A profound lawyer in the realms of philosophy and history, writing on the law of evidence, said:

"At common law, the testimony of the prosecutrix or injured person, in the trial of offences against the chastity of women, was alone sufficient evidence to support a con-

viction; neither a second witness nor corroborating circumstances were necessary." 3 Wigmore, Evidence, sec. 2061.

This principle of the common law is as vital a part of the statutory law of Nebraska as if it had been inserted bodily in a Nebraska statute duly enacted. It is consistent with every principle of government and statute. The supreme court of this state in reviewing a conviction for rape once correctly ruled, following the law stated by Wigmore:

"Where the jury are satisfied beyond a reasonable doubt from the testimony of the prosecutrix alone of the guilt of the accused, they will be justified in returning a verdict of guilty." *Garrison v. People,* 6 Neb. 274.

In a later case, through obvious mistake, contrary to the earlier decision, the following appears in the syllabus:

"At common law, where the accused was not permitted to testify in his own behalf, the testimony of the prosecutrix might be sufficient to warrant a conviction for rape; but under the statute, where the accused avails himself of the right to testify and clearly and explicitly denies the commission of the offense, there must be testimony corroborating that of the prosecutrix to authorize a conviction." *Mathews v. State,* 19 Neb. 330.

In the opinion in that case reference was made to utterances of Lord Chief Justice Hale in 1680, but omitting and violating part of what he then said:

"The party ravished may give evidence upon oath and is in law a competent witness; but the credibility of her testimony, and how far forth she is to be believed, must be left to the jury, and is more or less credible according to the circumstances of fact that concur in that testimony. * * * It is one thing whether a witness be admissible to be heard; another thing, whether they are to be believed when heard. It is true, rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered that it is an accusation easily to be made and hard to be proved; and

harder to be defended by the party accused, though never so innocent." 1 Pleas of the Crown, 633, 635, quoted in 3 Wigmore, Evidence, sec. 2061.

When those principles were announced in 1680, a person accused of rape in England could not testify as a witness in his own behalf. He could then be convicted on the un-corroborated testimony of his victim. If found guilty by the jury and sentenced by the court, his punishment was death. No wonder the Lord Chief Justice, under the old system and the law as it then stood, said that the charge of rape was hard to defend. In the present era under entirely different laws and conditions, accused, if guilty, does not suffer death as punishment. Here and now he may have compulsory process to bring witnesses into court to testify to his good character and to his inno-cence. He is permitted to testify in his own behalf. The law surrounds him with the presumption of innocence until a verdict of guilty is rendered. He may ruin an innocent little girl for life and escape with imprisonment for three years. The jury are not permitted to believe the child's truthful story of the ravishment, if uncorroborated, but they must in that event acquit accused, even if his denial is perjury. Depraved boys may relate perjured stories of the child's previous unchastity, but a chaste woman, called by the state as a witness for the purpose of corroboration, cannot testify to a specific instance of an attempt by de-fendant to ravish such witness at a time when his relations with prosecutrix indicated an intent to ravish her. Ac-cused may employ to defend him a technical expert in criminal law with judicial authority to bring into a modern court the awful Specter of Antiquity representing "De-capitated Innocence" and in emotional oratory make the imaginary bones of the ghostly apparition rattle in meta-phor like a molested skeleton in an ancient catacomb, while the prosecuting attorney may anticipate censure from the supreme court if, in representing the ravished child and the decent public, he departs from the attitude of obsequi-ous demeanor and impartiality that seem to be required

in the present case and in the cited case of *Flege v. State,* 93 Neb. 610.

The opinion in the case of *Mathews v. State,* 19 Neb. 330, and the cases following it, including the present case, not only violate statutory law, but they contradict a fundamental principle announced by Lord Chief Justice Hale when he expressed the view that the charge of ravishment was hard to defend. In the same connection he said the credibility of prosecutrix as a witness "must be left to the jury." 1 Pleas of the Crown, 633, 635, quoted in 3 Wigmore, Evidence, sec. 2061. The majority opinion requires the trial judge in his rulings on evidence to invade the province of the jury. The jury are not allowed to be judges of credibility and cannot give full credence to the testimony of prosecutrix, however truthful, unless corroborated, but, if uncorroborated, they are bound to acquit defendant upon his own uncorroborated testimony that he is innocent, though deserving no credence whatever. This amazing invasion of the province of the jury not only discredits prosecutrix in advance, but gives to accused's denial, though perjured, the effect of truth, if he committed the felonious act under circumstances destroying every means of corroborating her.

In *Mathews v. State,* 19 Neb. 330, the destructive departure from statutes and cherished precepts may be attributable to mistakes, but the opinions following the rulings in that case, with knowledge of the mistakes, amount to the usurpation and exercise of legislative power by the judiciary. Repetition has not sanctified the original heresies or made them into laws. The statutes are unamended and unrepealed and are still laws. The repeated decisions that violate them are not laws and should be overruled, one and all.

The supreme court of Oklahoma pointed to Nebraska as perhaps the only state in the Union requiring corroboration, where that rule had not been adopted by statute. *Brenton v. Territory,* 15 Okla. 6. In a later case the criminal court of appeals said:

"It is true that there are some decisions based upon special statutes which hold that corroboration of the prose-cutrix is necessary, but, in the absence of such a statute in this state, we could not agree to establish a rule so repugnant to justice, constituting such a shame upon our civilization; so insulting to decency and so pregnant with danger to weakness and virtue." *Reeves v. Territory,* 2 Okla. Cr. Rep. 351.

Another violated statute declares:

"No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Comp. St. 1922, sec. 10186.

There was no miscarriage of justice in the trial court. Any other verdict than the one rendered would have caused a miscarriage of justice. The verdict would have been the same had the trial been conducted in all respects according to strict technical rules.

After requiring the trial court to violate the statute permitting a conviction without corroboration of prosecutrix, the majority proceeded to destroy proper means of corroboration by eliminating the element of defendant's criminal intent, by preventing proof of specific instances showing accused's propensity to ravish, by adopting rules of evidence at variance with correct principles of law, and by indirectly overruling former opinions based on reason and justice. Before the present decision was rendered, the law applicable here was declared to be:

"Opportunity and disposition on the part of the defendant to commit the crime will furnish sufficient corroboration." *Dawson v. State,* 96 Neb. 777; *Whetstone v. State,* 99 Neb. 469.

Under court-made rules requiring corroboration, "opportunity and disposition" were parts of the state's case in

chief. The state had a right to, and did, prove those corroborating facts. In defense defendant testified to the effect that he took the child with him in his car to accommodate her and her parents; that his remark as to making her his second wife was a joke; that his suit for a divorce was a ruse to get his wife back. He therefore testified to his good intentions and disposition in his attitude toward the child. The necessity of showing the contrary arose on rebuttal. For that purpose the specific instance of his indecent assault upon a married woman was competent and proper from every standpoint in ascertaining the truth. It tended to show a disposition and intention to ravish. The previous chastity of the child was in issue. To disprove her testimony that she was chaste before defendant ravished her, proof of specific instances to the contrary was admissible under the authority of *Woodruff v. State,* 72 Neb. 815. By analogy specific instances apply to one situation as well as to the other. The state and the members of society as a whole are entitled to the same rules of evidence as defendant, unless equality before the law is a farce. Improper relations of the parties at other times are proper subjects of inquiry according to the following precept:

"In the prosecution of a party for rape upon a female child under the age of consent, testimony as to improper conduct on the part of the defendant, at other times than that charged, with the same child and of the same character named and set out in the information is properly received." *Evers v. State,* 84 Neb. 708.

To prevent the reversal of a conviction for excessive cross-examination not affecting the verdict was one of the very purposes of the legislature in requiring the supreme court to disregard harmless error. Comp. St. 1922, sec. 10186.

The holy attributes of sex that perpetuate human life, like the love of a kind mother, came out of the bosom of God as pure and white "as the down on an angel's wing." It is no fault of the legislature that administration of the

statute to protect chastity has fallen into utter disgrace.

I dissent from the entire opinion of the majority. I adhere to the overruled decision affirming the conviction in *Abbott v. State,* 113 Neb. 517, and in *Swogger v. State,* 115 Neb. 621.

Note—See Criminal Law, 62 L. R. A. 228; 48 L. R. A. n. s. 238; 22 R. C. L. 1204; 14 L. R. A. n. s. 689; 8 R. C. L. 210; 2 R. C. L. Supp. 575; 4 R. C. L. Supp. 535.