CARL PLESSMAN V. STATE OF NEBRASKA.

FILED APRIL 15, 1936. No. 29703.

*G. E. Hager* and *James L. Brown,* for plaintiff in error.

*William H. Wright, Attorney General, Daniel Stubbs* and *Lester A. Danielson; contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

PAINE, J.

Carl Plessman was convicted of arson and sentenced to four years in the penitentiary, which conviction and sentence he seeks to reverse in this court.

The information charged that the plaintiff in error, Carl Plessman, hereafter called the defendant, set fire to the barn of a neighboring farmer, John V. Juricek, on May 13, 1935, with intent to burn it. On May 15 defendant was brought into court by the sheriff, waived a preliminary examination in the municipal court, and about an hour later was arraigned in the district court, entered a plea of guilty, and was thereupon sentenced to two years in the penitentiary. Relatives of the defendant having employed counsel, the plea of guilty was withdrawn on May 25, and the sentence vacated. Thereupon, trial was had to a jury, which returned a verdict of guilty, and a sentence to four years at hard labor followed.

The errors relied upon for reversal are as follows: (1) Misconduct of the county attorney; (2) the verdict is contrary to the evidence; (3) error in giving instruction No. 8; (4) that the sentence is excessive.

The misconduct alleged against the county attorney consisted in failing to call Dr. Beverly A. Finkle as an expert witness after the county attorney had directed him to make an examination of the defendant, and it is charged that he reported to the county attorney that the defendant was insane and suffering from paranoia psychosis, but the county attorney did not call him as a witness during the trial, and defendant's counsel did not learn of these facts until after the verdict had been returned, as the defendant did not tell his attorney he had been examined by Dr. Finkle.

It is true that prosecutors are not partisans against the accused, and owe no greater obligation to the public than to the defendant, for a prosecutor acts in such matters without bias or prejudice. *Leahy v. State,* 31 Neb. 566, 48 N. W.

390; *Liniger v. State*, 85 Neb. 98, 122 N. W. 705; *Flege v. State*, 93 Neb. 610, 142 N. W. 276; *Swogger v. State*, 116 Neb. 563, 218 N. W. 416.

It is quite possible that there were perfectly satisfactory reasons why the prosecuting attorney felt that he was not justified in calling Dr. Finkle as a witness for the state.

It is charged that the verdict in this case is contrary to the evidence. The only defense offered was insanity. The defendant's counsel called as his expert witness Dr. B. F. Williams, who is an alienist of experience, and was superintendent in charge of the Nebraska state asylum at Lincoln for ten years. This witness was examined and cross-examined at great length. He had studied this defendant's mental condition carefully for several days, obtained his full family history, anl positively testified that he was a typical paranoid-psychosis case. His testimony is clear and convincing. The state on its part did not call to the witness-stand any witness to testify that the defendant was sane, in opposition to Dr. Williams' testimony.

Insanity is not ordinarily an issue by itself, to be passed on separately from the other issues in a criminal case, but is involved in the defendant's plea of not guilty. *Davis v. State*, 90 Neb. 361, 133 N. W. 406.

All men are presumed to be sane, but if, in the trial of a criminal case, any definite evidence of defendant's insanity appears in the evidence offered by either the state or the defense, then the burden is upon the state to convince the jury of the sanity of the defendant beyond a reasonable doubt as one of the elements necessary to establish guilt. *Torske v. State*, 123 Neb. 161, 242 N. W. 408; *Snider v. State*, 56 Neb. 309, 76 N. W. 574; *Shannon v. State*, 111 Neb. 457, 196 N. W. 635.

The presumption of sanity was rebutted in the case at bar, and it devolved upon the state to show by evidence beyond a reasonable doubt that the accused was capable of distinguishing between right and wrong with respect to the act committed in order to secure his conviction. The evidence in this respect was not rebutted, and fails to support the verdict rendered.

Instruction No. 8, which is attacked in this appeal, must be read in connection with the preceding instruction. Instruction No. 7 reads as follows: "In substance the defendant asserts the defense of insanity, or insanity to some degree, and in this connection you are instructed that one who is insane or insane in certain particulars and because of that commits a felony, he cannot properly be found guilty of such crime and punished as a felon therefor. You should consider the defendant in connection with all of the evidence for the purpose of ascertaining whether or not he was so or in such wise insane at the time of the firing of the barn in question, and if you find that he was, and that he fired the barn under the influence of such insanity, then in that case your verdict should be not guilty."

Instruction No. 8 reads as follows: "On the other hand, if you find from the evidence, that the defendant was not so unsound of mind as to be unable to distinguish between right and wrong in connection with setting fire to the barn, or not to know and understand what he was doing when he fired it, supposing you find from the evidence that he did fire it, or the general nature and effect of what he was doing in that connection, then and in such case you should find against him upon his defense of insanity."

It is charged that instruction No. 8 is open to serious criticism as being ambiguous in that it contains a double negative, and the jury were told that if from the evidence the defendant is not so unsound of mind as to be unable to distinguish between right and wrong, or not to know and understand what he was doing, or the general nature and effect of what he was doing, then they should find against him.

There are two distinct elements in connection with the crime charged. The first is, whether the accused knew that applying a flame will destroy the barn. This may be called the quality of the act; but the second element involves the question whether the accused understood the difference between right and wrong with respect to that act. To state it another way, the jury are told in instruction No. 8 to find

against the defendant upon his defense of insanity if he knew the general nature and effect of what he was doing. Without doubt this defendant, who had harbored a fancied grudge against his neighbor for some 15 years, knew that his act would start a fire, and endeavored to be quite clever in attempting to carry it out during the night, but the dogs barked in the barn and Mr. Juricek went down and put out the fire, which had been started in the haymow.

This court has said: "No form of insanity is recognized in this state as a defense to a criminal act unless it affects the mind of the accused to such an extent that it renders him incapable of distinguishing between right and wrong with reference to the act committed." *Torske v. State,* 123 Neb. 161, 242 N. W. 408. See, also, *Wright v. People,* 4 Neb. 407; *Hart v. State,* 14 Neb. 572, 16 N. W. 905; *Burgo v. State,* 26 Neb. 639, 42 N. W. 701; *Shannon v. State,* 111 Neb. 457, 196 N. W. 635; *Wilson v. State,* 120 Neb. 468, 233 N. W. 461.

In *Knights v. State,* 58 Neb. 225, 78 N. W. 508, Judge Sullivan, in reversing the conviction, said: "Ordinarily, insane persons comprehend the nature of their acts. When they take life or destroy property they usually know what they are doing, and often choose means singularly fitted to accomplish the end in view. The jury in this case may have believed that the defendant applied a lighted match to the property in question understanding well that combustion would follow and that the store building and its contents would be reduced to ashes, and they may have refused, for that reason, to acquit him, although reasonably doubting his capacity to distinguish between right and wrong with respect to the act."

Instruction No. 8 is erroneous, for the instruction says that the defendant must be so insane as not to know and understand what he was doing, but that is not the law. He may have known exactly what he was doing, but not have been able to know whether his act was right or wrong.

The state failed to produce any evidence at all to rebut the positive and direct evidence tending to prove that the defendant was insane. In the brief the state attempts to

excuse this lack of evidence by saying: "At the most, testimony by Dr. Finkle would have been merely cumulative."

For the prejudicial errors indicated herein, the judgment and sentence are hereby

REVERSED.