THOMAS WALLS v. STATE OF NEBRASKA.
7 N. W. (2d) 709

FILED JANUARY 22, 1943. No. 31483.

*Neighbors & Danielson,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *John H. Comstock, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ.

SIMMONS, C. J.

Defendant was charged with breaking and entering a filling station with intent to steal. He was tried and by a jury found guilty of the crime. He appeals. We affirm the judgment of the trial court.

Defendant at the trial and on his appeal here had the service of able counsel, who died after the case was briefed. Defendant appeared personally at the bar of this court and orally submitted his case upon the brief prepared and presented here by his counsel.

The evidence establishes that on the night in question the defendant and two women companions went to a night club in Scottsbluff. He was there for some time drinking beer and whisky and dancing with his companions. Sometime after midnight one of the women, because of his drunken condition, left him and went home. The other remained for some time and finally, for the same reason, she left him and went home. The defendant then visited another night club, continued his drinking and sometime around 3 o'clock in the morning entered a café, ate and met friends. These friends, two young men, had also been drinking. They proposed to drive to Denver and asked defendant to go with them. They discussed the need of money and where they could get it. They left the café, entered a car owned by the father of one of the men, drove around a bit, and finally went to the service station where one of the men worked. There defendant kicked out a glass in the door, then it was opened by reaching through the opening made by the broken glass, the defendant and the employee entered, opened

the safe and took out a bag containing currency, coins and checks. The third man entered before the job was done. Following that they left the building taking the bag and contents with them, and drove to Morrill. On the way the defendant opened the sack, took out the contents, took the coins and currency himself and gave the checks to the others. The coin sack was thrown out of the car window. It was later found on the highway west of Scottsbluff. At Morrill they bought gas, and cashed a check. They went to Torrington where one of them, not the defendant, got coffee and cashed a check. Starting for Cheyenne, the defendant got into the rear seat and went to sleep. They drove to Cheyenne, to Laramie, to Fort Collins, where on mid-morning they stopped at a tavern, and while being served beer, one of the men, not the defendant, told what had been done and their arrest followed. There is no substantial dispute as to the above facts.

The defendant testified in his own behalf that he had some money when he started the evening. This he thought was pretty well spent before the evening was over. He testified as to his drinking and generally told where he had been during the evening, down to the time he got into the car with the others under the "impression" that he was going to Denver. From that time on he testifies that he remembers nothing until he woke up at Fort Collins. Defendant's leg was cut during the night. He testified that he does not remember when or how it happened. When arrested defendant had coins and currency in four pockets. The evidence of the degree of drunkenness of the three men when at the café and before is conflicting. It ranges from testimony that defendant was staggering drunk to he had been drinking but was by no means as drunk as the other two, who remembered fairly well all that happened, and in particular what happened when the crime was committed.

Defendant's principal contention is that he was too drunk to remember what happened, too drunk to form the necessary criminal intent, and too drunk to distinguish between right and wrong. The evidence is conflicting, but no more

so than might be expected under the circumstances. The other men testified that while in jail at Fort Collins, the defendant told them that he was a "four-time loser," and that if one of them would assume responsibility they, being young and with a good record, could get a parole. This defendant denied, as he did other parts of their testimony. He admitted on cross-examination that he previously had been convicted of a felony. The jury had the right to determine the credibility of defendant.

It is patent, if reversible error was not committed at the trial, that the evidence sustains the "guilty" verdict.

Section 29-2308, Comp. St. 1929, provides: "No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

Defendant complains about some 20 rulings of the court on the admission or rejection of evidence. These we have reviewed and find that prejudicial error was not made.

Defendant next complains that there are inconsistencies in the state's evidence. These matters were for the consideration of the jury in determining the issues presented. Reversible error is not shown.

The court gave the usual instructions as to the elements of the crime, including intent, the presumption of innocence, the testimony of accomplices, the credibility of witnesses, and the reasonable doubt rule. The court further instructed the jury as to intoxication with relation to the question of criminal intent, and gave an instruction as a guide to determine whether or not the defendant intended to commit the crime, and the consideration which should be given to evidence of excessive intoxication by which the party is wholly deprived of reason. No complaint is made here as to any of these instructions.

The trial court refused to give an instruction, requested

by the defendant, concluding with the proposition that, if the jury found that defendant had sufficient mental capacity to understand what he was doing, but if they had a reasonable doubt that the defendant had the mental capacity to distinguish right from wrong at the time he broke and entered the filling station, then the jury should acquit. Defendant complains about the refusal of the trial court to give the tendered instruction, and its failure to give one covering the above proposition. Defendant bases this assignment upon the decision in *Knights v. State*, 58 Neb. 225, 78 N. W. 508, and supporting decisions. Defendant's evidence did not call for such an instruction. His evidence was that from the time he left the café until he woke up at Fort Collins his mind was a complete blank. Considering the instructions given, we find that prejudicial error was not made by the trial court either in refusing to give the requested instruction or one of similar import.

The evidence believed by the jury is ample to sustain the verdict. We have examined "the entire cause" and find that "no substantial miscarriage of justice has actually occurred."

The judgment of the trial court is

AFFIRMED.

Rose and Eberly, JJ., not participating.